**In re Charles MASON and Verline Mason, Debtors.**

**Bankruptcy No. 82–20612.**

United States Bankruptcy Court, W. D. Tennessee, W. D.

March 8, 1982.

On Motion to Dissolve Temporary Restraining Order March 12, 1982.

Irving Zeitlin, Memphis, Tenn., for debtors.

Jennifer Helton Small, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for State of Tenn.

DAVID S. KENNEDY, Bankruptcy Judge.

This cause came on to be heard on March 8, 1982, upon the "Motion To Dissolve Temporary Restraining Order" filed by the State of Tennessee, by and through the Attorney General for the State of Tennessee, and the Director of the Alcoholic Beverage Commission of Tennessee (hereinafter collectively referred to as "State of Tennessee").

The ultimate question here is whether or not the State of Tennessee should be legally and/or equitably enjoined, at this time, from attempting to revoke a certain retail liquor license. Two preliminary issues must be addressed prior to the resolution of the ultimate question, to-wit:

(1) Are the actions in question of the State of Tennessee automatically stayed by virtue of 11 U.S.C. Section 362(a)(1)?

(2) If the automatic stay does not apply, should the State of Tennessee be enjoined nevertheless by virtue of 11 U.S.C. Section

105(a), notwithstanding the exception found in 11 U.S.C. Section 362(b)(4)?

On February 18, 1982, the above-named Debtors, Charles Mason and Verline Mason ("Debtors"), filed an original petition under 11 U.S.C. Section 302 and Chapter 13 of the Bankruptcy Code. Debtors own and operate a retail liquor store known as Pee Wee's Package Store, 2211 Chelsea Avenue, Memphis, Tennessee. The liquor license is in the name of the Debtor, Verline Mason ("Mrs. Mason"). Debtors assert that $20,000.00 was paid for this liquor license. The liquor license is necessary for an effective financial rehabilitation and successful repayment plan to creditors. Debtors' proposed extension plan contemplates payment in full to all holders of claims.

On February 19, 1982, the State of Tennessee, not being aware of the Debtors' Chapter 13 case, notified Mrs. Mason via certified mail that an administrative hearing would be held on March 9, 1982, in Nashville, Tennessee, to determine if her retail liquor license should be revoked due to alleged violations of Tennessee Code Annotated Section 57–1–207(b), infra.

Electing, under the circumstances, not to rely solely upon the automatic stay provisions of 11 U.S.C. Section 362(a)(1), the Debtors sought and obtained an independent "Temporary Restraining Order" on March 4, 1982, under Bankruptcy Rule 765 and 11 U.S.C. Section 105(a), whereupon the State of Tennessee requested a prompt hearing on its instant motion, which request was granted by the court.

Apparently, there were no monies owed to the State of Tennessee upon the filing of the instant Chapter 13 case. At any rate, the State of Tennessee contends, inter alia, that it does not seek to enforce a prepetition debt against the Debtors.[1]

A meeting of creditors pursuant to 11 U.S.C. Section 341(a) shall be held in Room 1142, Federal Building, Memphis, Tennessee, on March 22, 1982, at 1:00 o'clock P.M. There will be a hearing to consider the confirmation of the Debtors' proposed plan on April 5, 1982, at 10:30 o'clock A.M. in Room 1114, Federal Building, Memphis, Tennessee.

It is the *sole* position of the State of Tennessee that since Pee Wee's Package Store incurred three (3) delinquencies in the calendar year of 1981, the State of Tennessee, in an exercise of its police or regulatory powers, should be permitted to proceed with its administrative proceeding under applicable state law to determine whether the liquor license should be revoked.[2] State of Tennessee argues that its activities are regulatory in nature and, therefore, not covered by the automatic stay provisions of 11 U.S.C. Section 362(a)(1).

Tennessee Code Annotated Section 57–1–207(b), the relevant Statute, provides as follows:

"Each licensed dealer who is delinquent in the payment or remittance of any of the taxes imposed upon such dealer by law, and who fails, refuses or neglects to pay said tax when due, may have his license suspended by the commission in its discretion after due notice and hearing as now authorized under Section 57–3–214. *If any dealer's name appears on the delinquent tax report for as many as*

---

1. In any event under 11 U.S.C. Section 1322(a)(2), pre-bankruptcy priority tax claims can be paid in deferred or installment cash payments over the term of the plan, whether or not the taxing entities agree (although this Section requires all priority claims to be paid in full, albeit over a period of time).

2. See, 11 U.S.C. Section 525 which provides, inter alia, that notwithstanding any other laws, a governmental unit is prohibited from denying, *revoking, suspending* or refusing to renew a license based solely on the basis of the debtor's insolvency before bankruptcy: cf. *Perez v.*

*Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *In re Anderson*, 15 B.R. 399 (Bkrtcy.S.D.Miss.1981), the debtors made a motion to compel the Mississippi State Tax Commission to renew a liquor permit. Relying upon 11 U.S.C. Section 525, the Court held that where the State Tax Commission was the sole wholesale supplier of alcoholic beverages, so that the loss of the license by the debtors would force them to close their store and preclude a successful reorganization, the Commission could not be allowed to refuse to renew the license.

*three (3) times in any calendar year, it shall be the mandatory duty of the commission to revoke said dealer's license."* (Emphasis added.)

The memorandum of the State of Tennessee in support of its instant motion provides on p. 2 as follows: "Under such circumstances, it is the 'mandatory duty of the commission to revoke said dealer's license' ".

State of Tennessee asserts that the instant administrative proceeding is not based on a "pecuniary" purpose, but is based on its "policy or regulatory" power. The former is automatically stayed under 11 U.S.C. Section 362(a)(1); and the latter is not automatically stayed by virtue of 11 ᵀJ.S.C. Section 362(b)(4). State of Tennessee has also objected to the jurisdiction of the bankruptcy court or seeks abstention.

Debtors firstly contend that the post-Chapter 13 administrative proceeding commenced by the State of Tennessee is based on a pecuniary purpose and, therefore, such action was automatically stayed under 11 U.S.C. Section 362(a)(1), notwithstanding the exception found at 11 U.S.C. Section 362(b)(4). Debtors next contend that if the automatic stay does not apply, the State of Tennessee should be enjoined under 11 U.S.C. Section 105(a) and Bankruptcy Rule 765 as the liquor license is essential and vital to a successful repayment plan and that a revocation of the license, at this time, would interfere with and destroy the proposed repayment plan and business, which interference would unduly and adversely affect the Debtors' creditors, who stand to receive 100% of their claims in the event of a successful and completed extension plan under Chapter 13 of the Bankruptcy Code. It appears under the circumstances, and the record of the case that general creditors would receive little or no distribution under the liquidating provisions of Chapter 7 of the Bankruptcy Code in the event the liquor license is revoked.

**3.** 11 U.S.C. Section 101(14) provides that "entity" includes, among others, a governmental unit.

**4.** House Report reflects that "(A)ll proceedings are stayed, including . . . license revocation . . . proceedings."

The bankruptcy court has jurisdiction to consider a state or municipal governmental unit's activity which affects the estate of a debtor. 28 U.S.C. Section 1471(b). Moreover, the bankruptcy court has "exclusive" jurisdiction of all of the debtor's property, wherever located, as of the commencement of the bankruptcy case. 28 U.S.C. Section 1471(e). See also 11 U.S.C. Section 541; *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

A liquor license constitutes a property interest sufficient to invoke the jurisdiction of the bankruptcy court. See, among others, *Harris v. Lamping*, 12 B.R. 38 (Bkrtcy.E.D.Wis.1981); *In re Gencarelli*, 14 B.R. 751 (Bkrtcy.D.R.I.1981); *Matto's Inc. v. Olde Colonie Place*, 9 B.R. 89 (Bkrtcy.E. D.Mich.1981); *In re Anderson*, supra.

11 U.S.C. Section 362(a)(1) provides that: "[e]xcept as provided in subsection (b) of this section, *a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities,*[3] of—

(1) *the commencement* or continuation, including the issuance or employment of process, *of* a judicial, *administrative*, or other *proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . ." (Emphasis added.) See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297 (1977);[4] S.Rep. No. 95–989, 95th Cong., 2d Sess. 50 (1978).[5]

Accordingly, "administrative proceedings" by governmental units for a pecuniary purpose are automatically stayed. *In re Thomassen*, 15 B.R. 907 (Bkrtcy.App. Panel 9th Cir. 1981).

**5.** Senate Report omits mention of license revocation proceedings.

11 U.S.C. Section 362(b)(4), however, provides that:

"[t]he filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

. . . .

(4) under section (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit's police or regulatory power; . . ."

Accordingly, "administrative proceedings" by governmental units to enforce their police or regulatory powers are not automatically stayed. *In re Thomassen*, supra.

In *In re Thomassen*, supra, the 9th Circuit Panel stated on p. 909 as follows:

"The 'pecuniary purpose' test cited above also seems to be aimed at preventing the circumvention of the relief available to both debtors and general creditors under the Bankruptcy Code. Although it specifically recognizes that the desire for economic advantage—either to the governmental unit, directly, or to its individual citizens—is often at the heart of statutory attempts to sidestep the effect of the federal bankruptcy laws, it finally rests upon the same Supremacy Clause arguments set forth in the *Perez* decision. State and local governmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws. When they seek to do so for a pecuniary purpose, they are automatically stayed, notwithstanding the exception found at 11 U.S.C. Section 362(b)(4)."

11 U.S.C. Section 105(a) provides as follows:

"The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977), U.S.Code .Cong. & Admin. News at p. 6298, provides as follows:

"Subsection (b) lists five exceptions to the automatic stay. *The effect of an exemp-*

*tion is not to make the action immune from injunction.*

"The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of proposed title 11, derived from Bankruptcy Act Section 21(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The bankruptcy courts are brought within the scope of the All Writs Statute, 28 U.S.C. 1651 (1970), and are given the powers of a court of law, equity, and admiralty (H.R. 8200, Section 243(a), proposed 28 U.S.C. 1481). Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy, or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

"With respect to stays issued under other powers, or the application of the automatic stay, to governmental actions, this section and the other sections mentioned are intended to be an express waiver of sovereign immunity of the Federal government, and an assertion of the bankruptcy power over State governments under the Supremacy Clause notwithstanding a State's sovereign immunity." (Emphasis added.) See also S.Rep. No. 95–989, 95th Cong.2d Sess. 51 (1978).

In *In re Thomassen*, supra, the 9th Circuit Panel stated on p. 910 as follows:

"Despite the inapplicability of the section 362(a)(1) automatic stay to the facts of the present appeal, the Panel has no doubt that the trial court had the power to stay the instant California Board of Medical Quality Assurance proceedings

pursuant to 11 U.S.C. Section 105(a). See H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 342 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 51 (1978)." See also *In re Dolly Madison Industries, Inc.*, 504 F.2d 499 (C.A.Pa.1974); *In re Thomas J. Grosso Inv., Inc.*, 457 F.2d 168 (C.A.Ariz.1972); *Entin v. Stevens*, 323 F.2d 894 (C.A.Iowa 1963) (all decided under Section 2a(15) of former Bankruptcy Act).

In *In re Gencarelli*, 14 B.R. 751 (Bkrtcy.D. R.I.1981), a case involving a governmental unit's attempt to revoke a debtor's liquor license, the Court stated, after temporarily restraining such entity, as follows on p. 753:

"Those cases which have allow⟨ d the regulatory activities exception generally fall into the categories outlined by the House Report, e.g., *Colonial Tavern, Inc. v. Byrne*, 420 F.Supp. 44 (D.Mass.1976) (suspension of liquor license upheld for repeated violations of a midnight closing hour regulation); *Commonwealth v. Peggs Run Coal Co.* [55 Pa.Cmwlth. 312], 423 A.2d 765, Bank.L.Rptr. (CCH) Para. 67842 (1980) (to allow the closing of a coal production facility which was violating local environmental resource laws); *In re Carmen Alessi*, 12 B.R. 96, 7 B.C.D. 1037 (Bkrtcy.N.D.Ill.1981) (suspension of a racing license was upheld because of the appearance of 'fixing' a race. The suspension maintained the integrity of a horse racing facility). These cases all concern the enforcement of laws protecting the health and/or safety of the public, or protecting the public from being defrauded."

■ Although not totally free from doubt in this cause, the court finds that the instant administrative proceeding of the State of Tennessee under Tennessee Code Annotated Section 57–1–207(b) is not automatically stayed under 11 U.S.C. Section 362(a)(1) as the State of Tennessee is not attempting to collect a pre-petition debt; however, the court finds that such administrative proceedings are not immune from injunction under the circumstances and should be conditionally stayed under 11

U.S.C. Section 105(a) pending further order of this court. This injunction is necessary and appropriate to carry out the provisions of Chapter 13; and further unusual and exceptional circumstances warrant injunctive relief to protect and preserve property of the estate for the benefit of creditors.

If the State of Tennessee revokes the liquor license, the store would close and preclude a possibility of a successful 100% repayment plan to creditors. Congress has encouraged financially distressed debtors to attempt to pay their debts as an alternative to straight bankruptcy. The actions of the State of Tennessee, under the facts and circumstances of the instant cause, interfere with this policy and further jeopardizes and would significantly diminish the value of the Debtors' estate—all to the detriment of the Debtors' creditors. The continued operation of this business under a Chapter 13 plan does not, ipso facto, threaten the health or safety of Tennessee residents. There appears to be no compelling reasons in light of all the circumstances to allow the administrative proceeding to proceed, at this time. This is not to say, however, that the court will tolerate financial irresponsibility of the Debtors during the term of the plan.

Based on all the foregoing and the entire record of this case, the State of Tennessee is conditionally enjoined from revoking the retail liquor license of Mrs. Mason pending further orders of this court to prevent imminent and immediate and irreparable injury, loss or damage which would otherwise occur—all to the detriment of the Debtors' creditors.

This is not an appropriate case for abstention as suggested by the State of Tennessee and revealed by the brief testimony adduced at the hearing.

Parenthetically, the court notes that in the event this Chapter 13 case were to be eventually converted to a liquidation case under Chapter 7 of the Bankruptcy Code,[6] the liquor license would perhaps be preserved for sale by the Chapter 7 bankruptcy

6. See 11 U.S.C. Section 1307.

trustee for the benefit of the Debtors' creditors.

Of course and if the Debtors' Chapter 13 case is eventually dismissed under 11 U.S.C. Section 1307, this injunction will dissolve by operation of law under 11 U.S.C. Section 362(c)(2)(B).

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED AND NOTICE IS HEREBY GIVEN:

1. That the Director of the Tennessee Alcoholic Beverage Commission, the Honorable Elyon Davis, and the Tennessee Attorney General are hereby conditionally enjoined, *at this time*, from attempting to suspend or revoke the retail liquor license of the Debtor, Verline Mason, pending further order of this Court.

2. That the Debtors, Charles Mason and Verline Mason, are hereby directed to file with this Court a verified monthly operating report of the business operations of Pee Wee's Package Store beginning in the month of April, 1982, and each month thereafter during the term of their repayment plan. The March, 1982, report should also include the period from February 18, 1982. The monthly reports shall be due on or before the fifteenth day of each following month. A copy of the future monthly operating reports shall be mailed by the Debtors to Ms. Jennifer H. Small, Assistant Attorney General, 450 James Robertson Parkway, Nashville, Tennessee, 37219 and the Chapter 13 Trustee for their review and monitoring.

3. That the Debtors, Charles Mason and Verline Mason, are further directed, during the term of their plan, to make timely future sales tax payments to the State of Tennessee arising out of the operation of Pee Wee's Package Store.

4. That the failure of the Debtors, Charles Mason and Verline Mason, to comply with Clauses 2 and 3 above may result in a dismissal or conversion of their Chapter 13 case, whichever is in the best interest of creditors or a dissolution of this injunction.

5. That in the event the Chapter 13 case is dismissed, this injunction shall be dissolved under 11 U.S.C. Section 362(c)(2)(B).

6. That the State of Tennessee is deemed to be a "party in interest" for purposes of this Chapter 13 case which status shall afford it the right to file an objection to the confirmation of the Debtors' proposed plan or a motion to dismiss or to convert the case, if the State of Tennessee desires to do so.

7. That at any time during this administration or the term of the plan, upon a change of circumstances, the State of Tennessee may file a "request" to dissolve this injunction whereupon an expedited hearing shall be held.

8. That in the event a discharge is ultimately granted the Debtors under 11 U.S.C. Section 1328(a), the Court will consider at the discharge hearing whether or not to make this conditional injunction permanent (provided the injunction has not been dissolved prior to that time).

## ON MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

On March 11, 1982, the Court signed a "Memorandum Order Re 'Motion To Dissolve Temporary Restraining Order' Combined With Related Orders And Notice Thereof" enjoining the State of Tennessee from proceeding, at this time, to revoke a liquor license.

The following is intended to serve as a supplemental memorandum:

The bankruptcy court's grant of power to issue discretionary stays emanates from 11 U.S.C. Section 105(a),[1] notwithstanding 11 U.S.C. Section 362(b)(4).

*Collier On Bankruptcy*, Vol. 2 (15th Ed.), Paragraph 105.01, provides:

"Section 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case."

*Collier On Bankruptcy*, Vol. 2 (15th Ed.), Paragraph 105.02 provides:

---

1. 11 U.S.C. Section 105(a) is based on, and does not substantially differ from Section 2(a)(15) of the former Bankruptcy Act, 11 U.S.C. Section 11(a)(15).

"As with any court of equity, once the bankruptcy court acquires custody of property, it may protect that property by injunction." (citations omitted.)

". . . (T)hus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed." H.R. No. 95–595, 95th Cong. 1st Sess. (1977), 342–3, U.S.Code Cong. & Admin.News 1978, p. 6298; Senate Report No. 95–989, 95th Cong. 2nd Sess. (1978) 51–2.

A "threat to the estate's assets" test was applied in cases decided under Section 2(a)(15) of the former Bankruptcy Act, 11 U.S.C. Section 11(a)(15). In *In .e Bel Air Chateau Hospital, Inc.*, 611 F.2d 1248 (9th Cir. 1979), the court stated that:

"(i)f regulatory proceedings threatened the assets of the estate, the decision to issue a stay can then be made on a discretionary basis." See also *In re Shippers Interstate Service, Inc.*, 618 F.2d 9 (7th Cir. 1980).

In seeking to revoke the liquor license the State of Tennessee relies upon Tennessee Code Annotated Section 57–1–207(b) which provides, in pertinent part, as follows:

". . . (I)f any dealer's name appears on the delinquent tax report for as many as three (3) times in any calendar year, *it shall be the mandatory duty of the Commission to revoke said dealer's license*." (Emphasis added.)

Inasmuch as there are no factual issues which need resolution by trial regarding the position of the State of Tennessee, the court is satisfied that it is proper to resolve this controversy, at this time.

■ The liquor license is a substantial asset of the estate. State of Tennessee's actions are a "threat to the estate's assets". Further, the costs of prolonged litigation in the State's administrative and judicial systems would substantially frustrate the Debtors' attempt to pay their creditors under a court supervised plan under Chapter 13 of the Bankruptcy Code and interfere with the creditors receiving payment under such plan.

Based on the foregoing, the court, therefore, concludes that this is an appropriate proceeding, at this time, to invoke and issue a discretionary stay pursuant to the provisions of 11 U.S.C. Section 105(a) in order to enjoin the instant regulatory action of the State of Tennessee, which action threatens a substantial asset of the estate, namely the liquor license.

The equities, considered in light of the policies of the State of Tennessee and the United States of America, tip decidedly, at this time, in favor of the Debtor's creditors. If the liquor license is revoked under Tennessee Code Annotated Section 57–1–207(b), the business will be closed and a substantial asset in connection therewith will be lost.