**In re AEGEAN FARE, INC., Debtor.**

**AEGEAN FARE, INC., Plaintiff,**

v.

**COMMONWEALTH OF MASSACHU-SETTS, DEPARTMENT OF REVENUE, Defendant.**

**Bankruptcy No. 83-1377-L.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 2, 1983.

Bernard P. Rome, Wasserman, Salter & Rome, Boston, Mass., for debtor.

Jeffrey S. Ogilvie, Mass. Dept. of Revenue, Boston, Mass., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE THE COMMONWEALTH OF MASSACHUSETTS' MOTION FOR MODIFICATION OF ADEQUATE PROTECTION ORDER

THOMAS W. LAWLESS, Bankruptcy Judge.

The above-motion filed by. the Commonwealth of Massachusetts by the Department of Revenue (the "Commonwealth") seeks modification of the Court's October 14, 1983 interim order that required the Aegean Fare, Inc. (the "Debtor") to pay to the Commonwealth current taxes on a weekly basis and $500.00 per week on account of outstanding taxes as adequate protection of the Commonwealth's interest in the Debtor's property. *Aegean Fare, Inc. v. Commonwealth of Massachusetts,* 33 B.R. 745, (Bkrtcy.D.Mass.1983). To the extent relevant, the Court's October 14, 1983 Memorandum and Order is incorporated herein. After hearing on November 3, 1983, the Court makes the following findings of fact and conclusions of law:

Pursuant to the Court's order, the Debtor and the Commonwealth submitted written appraisals of the property which the Commonwealth had liened and levied upon prior to filing of the Debtor's reorganization petition. The Debtor's appraisal was compiled by Eliot Associates and indicates a value of $76,348.00. The Commonwealth's appraisal, compiled by the Edward F. Smith Appraisal Service, lists the "fair market value of the property by liquidation at public auction at $96,767.50." Neither party offered the testimony of their appraiser in support of their respective positions and only the Commonwealth moved that their appraisal be adopted by the Court. No objection having been made to the Commonwealth's motion, the Court hereby accepts the Commonwealth's appraisal into evidence and adopts the values stated therein.

The property liened and levied upon by the Commonwealth can be divided into three major categories with the following stated values:

(1) Inventory (food, beer/wine, paper products): $5,945.00.

(2) Assorted glassware, pots, pans, silverware and dishes: $4,724.50.

(3) Equipment (refrigerator/freezer units, shelving, dishwashers, deli/pastry cases, cash registers, ice machines, assorted tables and chairs): $85,-588.00.

Although the Commonwealth has asserted a claim against the Debtor's estate in an amount in excess of $300,000.00, I find that the value of the Commonwealth's lien is $96,765.50 and it is only that interest in property which is entitled to adequate protection. *See, e.g., In re Alyucan Interstate Corp.,* 12 B.R. 803, 808 (Bkrtcy.D.Utah 1981). Furthermore, I find that the Commonwealth has a right to receive adequate protection for any decline in value the above-described collateral may sustain after the order of turnover was entered since, but for the order, the Commonwealth could have sold the property and thus prevented or mitigated any loss or decline in the value of its collateral. *See, e.g., In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 825 (Bkrtcy.S.D.N.Y.1982).

Section 361 of the Bankruptcy Code offers three non-exclusive means of providing adequate protection. Section 361(1) provides that periodic cash payments to the creditor may provide adequate protection to the extent that the automatic stay and the debtor's use, sale, or lease of the property results in a decrease in the value of the security. Section 361(2) provides that additional or replacement liens may also provide adequate protection against a similar decrease in the value of the collateral. Finally, section 361(3) has been termed a "catch-all" by providing the Court with flexibility to formulate adequate protection on a case by case basis. House Report No. 95–595, 95th Cong. 1st. Sess. (1977) at pp. 338–40, U.S.Code Cong. & Admin.News 1978, p. 5787.

▮ At the two hearings on this matter, the Debtor proposed that adequate protection be provided to the Commonwealth by means of periodic cash payments pursuant to 11 U.S.C. § 361(1). Since the Debtor did not propose adequate protection by means of the devices contained in subsections 361(2) and (3), the Court need not consider these alternative means of providing adequate protection. *See In re Saint Peter's School,* 16 B.R. 404, 410 (Bkrtcy.S.D.N.Y. 1982) ("It is not for the court to structure what will constitute adequate protection of the secured creditor's interests; the debtor must affirmatively propose protection of the secured interest.").

▮ At the hearing on the Commonwealth's motion for modification of the interim adequate protection order, the Debtor proposed to continue paying current taxes on a weekly basis and $500.00 per week as adequate protection of the Commonwealth's interest in the property. The Commonwealth argued that these payments were inadequate to protect its interest in the Debtor's property. The Commonwealth asserted that an appropriate adequate protection order would require an immediate cash payment of $50,000.00 from the Debtor and weekly payments of $2,100.00. The Commonwealth did not offer any evidence of any economic depreciation that the assets would incur from the Debtor's use of the Commonwealth's collateral. Under the terms of the Commonwealth's proposed order, the entire amount of the Commonwealth's secured claim would be paid in less than six months. Absent evidence that the collateral will depreciate one hundred per cent in value in six months, this Court will not order periodic payments at the level suggested by the Commonwealth. It bears repeating that the right to adequate protection does not entitle a creditor to cash payments equivalent to its interest. *Aegean Fare, Inc. v. Commonwealth of Massachusetts, supra,* at 748. Nor are the level of periodic payments ordered as adequate protection of a creditor's secured position indicative of the treatment that the creditor's secured claim will receive in a plan of reorganization. Adequate protection furnished to a creditor pursuant to § 361 is intended to assure the maintenance, and thus recoverability of the lien value in the interim

period between the filing of the petition and the acceptance of a plan of reorganization.

■ The Commonwealth argued that its seizure and possession of the collateral prior to the filing of the Debtor's reorganization petition entitles it to a "heightened" level of adequate protection now that the property has been ordered to be turned over to the Debtor. The Commonwealth has not cited any authority for this proposition. Nor has this Court's research revealed any such authority. Despite the Commonwealth's lien and levy, prior to the Commonwealth's sale of the collateral the Debtor retained rights in the collateral sufficient to order turnover of these assets to the Debtor. *See United States v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Commonwealth's levy on these assets is merely a step towards the enforcement of its lien rights provided by state law. The Court does not see how the Commonwealth's levy is distinguishable from the rights of a mortgagee who, on the eve of foreclosure, is stayed by the mortgagor's bankruptcy filing. Neither party—the mortgagee nor the levying creditor—has extinguished the debtor's rights in the collateral. The fact that the method of enforcing the Commonwealth's lien requires it to take possession of the collateral under levy does not warrant different treatment of its lien or warrant heightened adequate protection of its interest in the Debtor's property.

■ The Commonwealth has an undersecured claim in that the value of the liened assets is less than the amount of its asserted claim. The Commonwealth is only entitled to periodic payments to the extent that the value of the liened collateral diminishes due to the automatic stay and the Debtor's use, sale, or lease of the property during the bankruptcy proceeding diminishes that value. An undersecured claimant is not entitled to receive compensation for the loss of the use of the money it would have received if the sale of the collateral had taken place and bankruptcy not intervened. *See In re American Mariner Industries, Inc.,* 27 B.R. 1004 (Bkrtcy.App. 9th Cir.1983); *In re Cantrup,* 32 B.R. 1004 (Bkrtcy.D.Colo.1983) (en banc); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819 (Bkrtcy.S.D.N.Y.1982). *But see In re Monroe Park,* 17 B.R. 934 (D.C.D.Del.1982). In other words, the clear weight of authority holds that adequate protection of an undersecured creditor's claim only contemplates protection against any decrease in value and does not require an additional increment for market rate interest on the value of such collateral. Authorities who have argued the contrary position have focused on the necessity for protecting the economic equivalent of the benefit of the secured party's bargain. *See American Mariner Industries, Inc., supra,* 1016–18 (Bkrtcy.App. 9th Cir.1983) (Hughes, B.J., dissenting). In the case at bar, there has been no "bargain" struck between the Debtor and the Commonwealth as the lien claim arises only by force of statute. Accordingly, the Commonwealth is not entitled to protection of the time value of its undersecured claim.

■ Section 362(d) requires the Court to grant relief from the stay if the creditor is not adequately protected or if the debtor has no equity in the property and the property is not necessary for the debtor's reorganization. Since I find that the property is necessary for an effective reorganization and that there is a reasonable possibility of a successful reorganization within a reasonable time, the Court need only concern itself with the adequacy of the protection offered by the Debtor.

The Debtor's proposed offer of adequate protection in the form of periodic weekly payments in the amount of $500.00 is insufficient to protect the value of the liened inventory. If it has not already been depleted, the inventory will be used and sold in the ordinary course of the Debtor's business. The Debtor has not offered to grant an additional or replacement lien on any inventory acquired by the Debtor after the filing of the Chapter 11 petition. Since it is not this Court's function to fashion an adequate protection order different from that

proposed, by the Debtor, *see In re Saint Peter's School, supra,* at 410, I conclude that the amount of periodic payment necessary to adequately protect the Commonwealth's lien on the Debtor's inventory is the present value of the inventory, $5,945.00, and this amount is ordered to be paid in full to the Commonwealth within ten (10) days of the date of the entry of this order.

Similarly, I find that the Debtor's proposed periodic payment schedule is inadequate to protect the Commonwealth's lien on the Debtor's assorted glassware and kitchen utensils as the value of this collateral will be subject to very rapid depreciation through breakage and its use during the Debtor's Chapter 11 proceeding. I find that the amount of periodic payment necessary to adequately protect the lien value in this collateral is payment to the Commonwealth in the amount of $4,724.50 within twenty (20) days of the date of the entry of this order.

As to the third category of collateral, the Debtor's equipment, periodic payments equal to the rate of depreciation of this collateral would seem to fall somewhere between the Debtor's position ($500.00 per week, one hundred per cent depreciation in forty months) and the Commonwealth's proposal ($2,100.00 per week, one hundred per cent depreciation in ten months). Applying straight-line depreciation based upon a usable life-span of twenty four months results in periodic payments of $823.00 per week to the Commonwealth. Accordingly, I order that periodic payments be paid to the Commonwealth as adequate protection of its secured interest in the Debtor's equipment at the rate of $823.00 per week, commencing Monday, December 5, 1983, in lieu of the interim order of $500.00 per week. Periodic payments retroactive to October 10, 1983, (the date of the first $500.00 payment) at the rate of $323.00 per week are ordered to be paid on a weekly basis commencing December 5, 1983 until the period between October 5, 1983 and December 5, 1983 is paid at the now established $823.00 per week rate.

As additional adequate protection of the Commonwealth's interest, it is ordered that:

(1) The Debtor maintain adequate insurance on its premises and contents and provide proper maintenance to the property that secures the Commonwealth's lien.

(2) The Debtor continue to make weekly payments to the Commonwealth of Massachusetts on the current meals taxes due and to become due the Commonwealth.

(3) The Debtor is prohibited from selling, transferring or otherwise alienating the equipment that secures the Commonwealth's lien, unless done so after notice, hearing and order of the Court.

Should circumstances change or if the Debtor is unable to effectuate a reorganization within a reasonable time, the Court will entertain appropriate motions to modify this order and/or dismiss this proceeding or convert it to one under Chapter 7.

It is so Ordered.

## ORDER

For the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that:

(1) The Debtor pay $5,945.00 to the Commonwealth within ten (10) days of the date of entry of this order.

(2) The Debtor pay $4,724.50 to the Commonwealth within twenty (20) days of the date of entry of this order.

(3) The Debtor commence and continue to make payments on Monday, December 5, 1983, and each Monday thereafter, to the Commonwealth of Massachusetts in the amount of $823.00 per week until further order of the Court.

(4) The Debtor commence and continue to make payments on Monday, December 5, 1983, and each Monday thereafter, to the Commonwealth of Massachusetts in the amount of $323.00 per week until the period between October 5, 1983 and December 5, 1983, is paid at the now-established $823.00 per week rate.

(5) The Debtor maintain adequate insurance on its premises and contents and pro-

vide proper maintenance to the property that secures the Commonwealth's lien.

(6) The Debtor is prohibited from selling, transferring or otherwise alienating the property (other than inventory) that secures the Commonwealth's lien, unless done so after notice, hearing and order of the Court.