In re AEGEAN FARE, INC., Debtor.

AEGEAN FARE, INC., Plaintiff,

v.

LICENSING BOARD FOR the CITY OF BOSTON and Andrea W. Garguilo, Richard L. Arrington and Gerald J. Morrissey, as they are the Members of the Licensing Board for the City of Boston, Defendants.

Bankruptcy No. 83–1377–L.
Adv. No. 83–0915.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 22, 1983.

---

Bernard P. Rome, Wasserman, Salter & Rome, Boston, Mass., for plaintiff.

Harrison A. Fitch, Fitch, Miller & Tourse, Boston, Mass., for defendants.

**MEMORANDUM AND ORDER COMPELLING THE DEFENDANTS' RENEWAL OF THE DEBTOR'S C.V. 7 DAY MALT AND WINE LICENSES AND COMMON VICTUALLER'S LICENSES**

THOMAS W. LAWLESS, Chief Judge.

This matter is before the Court on the complaint of the Aegean Fare, Inc., ("Plaintiff" or "Debtor") against the Licensing Board for the City of Boston (the "Board") seeking an order compelling the renewal of (1) the Debtor's C.V. 7 Day Malt and Wine licenses for calendar year 1984 for the Debtor's restaurants located at 539 Commonwealth Avenue, Boston, and 1952 Beacon Street, Boston, Massachusetts, which licenses also include Common Victualler's Licenses for the above-mentioned locations; and (2) the Debtor's Common Victualler's License for its operations at Faneuil Hall Marketplace. After hearing on December 20, 1983, I find as follows:

After the Commonwealth of Massachusetts' (the "Commonwealth") seizure of the Debtor's three restaurants at the above-specified locations for non-payment of meals taxes on October 3, 1983, the Debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on October 4, 1983. After notice and hearing on October 5, 1983, the Court ordered the Commonwealth to turnover possession of the premises to the Debtor. *Aegean Fare, Inc. v. Commonwealth of Massachusetts,* 34 B.R. 965 (Bkrtcy.D.Mass.1983). Additionally, the Court ordered the appointment of an examiner to investigate, among other matters, the issue of the Debtor's disputed tax delinquency. From and since the order of turnover, the Debtor has been operating as a debtor-in-possession.

On December 1 and 15, 1983, the Board voted not to renew the above-specified liquor and restaurant licenses which the Debtor needs to operate its three businesses in 1984. The Board issued a "Decision and Statement of Reasons" on December 1, 1983, with respect to its decision not to renew the C.V. 7 Day Malt and Wine License for the Debtor's restaurant at 1952

Beacon Street, Boston. Although this is the only written decision regarding the Board's non-renewal of the Debtor's various licenses made available to the Court, it is undisputed that the *sole* reason for their non-renewal was the Debtor's failure to comply with the tax laws of the Commonwealth in that the Debtor had failed to pay various sums of pre-Chapter 11 meals taxes and it had not entered into a repayment plan with the Commonwealth. *See infra.*

In its written decision, the Board cited several authorities for its action, the first of which was a "Vote of the Board" taken by it on April 14, 1983:

> The Board will not renew liquor licenses under G.L. Chapter 138, section 16A for license year 1984 unless the Board is satisfied that all Meals Taxes and Corporate Income Taxes are paid up to date or, if an arrearage exists with respect to such taxes, that there is a valid agreement in force between the State Department of Revenue and the Licensee for the payment of such arrearage.

Second, the Board cited G.L. c. 233, "An Act To Provide A Revenue Enforcement And Protection Program For The Commonwealth", St.1983, c. 233, § 36 (effective July 1, 1983), which provides, in pertinent part, that:

> Any person applying to any . . . board . . . for a . . . license to conduct a . . . business or for the renewal of such . . . license, shall certify upon such application, under penalties of perjury that he has complied with all laws of the Commonwealth relating to taxes. Such . . .

license shall not be renewed unless such certification is made.

The Debtor-licensee apparently certified on its application that there was an agreement with the Commonwealth to pay the disputed tax delinquency (apparently, the Debtor did so on the basis of this Court's adequate protection orders entered pursuant to the order of turnover, *Aegean Fare, Inc. v. Commonwealth of Massachusetts*, 34 B.R. 965 (Bkrtcy.D.Mass.1983) modified (Dec. 2, 1983)). However, the Department of Revenue informed the Board that no such agreement to pay the taxes was in place.[1] Thereafter, the Board denied the Debtor's applications to renew its licenses.

As final authority in support of its decision not to renew the licenses, the Board cited G.L. c. 138 §§ 16A, 23 and 64, which provide that an application for renewal of a liquor license may be rejected for "cause", G.L. c. 138 § 16A, the Board may refuse a license if there has been a violation of any of the laws of the Commonwealth, G.L. c. 138 § 64, or of any requirements of the Board, G.L. c. 138 § 23.

In its complaint, the Debtor contends the Board's action in voting not to renew the Debtor's licenses is a direct violation of the automatic stay provisions of the Bankruptcy Code. Second, the Debtor asserts that there is a legitimate dispute whether the Debtor owes any taxes to the Commonwealth. Finally, the Debtor contends that its undisputed compliance with this Court's adequate protection orders (which require the Debtor to pay current taxes on a weekly basis and $823.00 per week as an adequate

---

1. On October 31, 1983, James A. Aloisi, Jr. Chief, Legal Bureau, Department of Revenue, wrote the following letter to Ms. Andrea Gargiulo, Chairwoman of the Boston Licensing Board:

Dear Ms. Garguilo:

You have asked whether the Department of Revenue has agreed to any Bankruptcy Court order requiring Aegean Fare, Inc., to repay the Commonwealth for its substantial arrearages in the sales taxes on meals. I write to inform you that the Department of Revenue did not agree to the order of Bankruptcy Court, and does not acquiesce to that Courts' [sic] decision. We have, accordingly, appealed from the decision and order of the Bankruptcy Court and intend to pursue our appeal vigorously and exhaustively.

I feel obliged to state for the record that the Department is strongly opposed to the manipulation of the Bankruptcy process by tax scofflaws seeking to avoid the consequences of their state law violations. We believe the public interest is served by strong, unequivocal acts on the part of government agencies which make clear the impropriety and inadvisability of tax evasion.

Very truly yours,

/s/

James A. Aloisi, Jr.
Chief, Legal Bureau

protection of the Commonwealth's lien on the Debtor's assets) is sufficient satisfaction of the Board's requirement that there be "a valid agreement in force between the State Department of Revenue and the Licensee for the payment of such arrearage." *But see note 1.*

In its answer to the Debtor's complaint, the Board raises six affirmative defenses to the Debtor's requested relief. Five of these defenses [2]—will be implicitly addressed in the context of the following discussion, but the Board's basic position can be summarized as follows: the issuance of a liquor license is a regulating function that is exempt from the operation of the automatic stay pursuant to 11 U.S.C. § 362(b)(4). The Board argues that it is not an agent of the Commonwealth's Department of Revenue and that its decision not to renew the Debtor's licenses was not an attempt to collect taxes. The Board relies on paragraph 18 of its December, 1983 written decision as being representative of its position not to renew the licenses:

18. The jurisdiction of the Bankruptcy Court is to protect a public interest separate and apart from the particular state interest in the conduct of a particular state license or permit. The issue before this regulatory board is not the rights of the Commonwealth as one creditor among many, but rather the right and ability of this regulatory board to insure that public licenses are conducted properly and that licensees do not use their public licenses to hold themselves out to the public as an authorized party to collect state monies when, in fact, they divert those state monies to their own personal use in violation of their public trust.

With all due deference to the Board, the jurisdiction of bankruptcy courts is sufficiently ambiguous without the Boston Licensing Board adding its own interpretation of this Court's function and responsibilities. Accordingly, the Court will review the applicable authorities.

## DISCUSSION

█ The bankruptcy court has "exclusive jurisdiction of all of the debtor's property, wherever located, as of the commencement of the bankruptcy case." 28 U.S.C.

---

**2.** The Board's sixth affirmative defense is that the Debtor's complaint fails to state "a case or controversy, ripe for judicial review as required by U.S.Const. Art. III, § 2, since the decision of the Licensing Board is stayed pending appeal, pursuant to M.G.L. c. 138 § 16A." With respect to the Board's decision not to renew Common Victualer's (food) licenses for the Debtor's three restaurants, no appeal has been taken by the Debtor. Since the decision is effective January 1, 1984, the Debtor's complaint states a claim ripe for this Court's review. However, the Debtor has appealed the Board's decision not renewing the Malt and Wine Licenses for its two restaurants that have same. G.L. c. 138 § 16A does provide that a non-renewal decision by a Board is stayed until the period for "an appeal has expired or until his appeal has been dismissed." G.L. c. 138 § 67 provides that the state Alcoholic Beverages Commission (ABC) shall have a hearing on the appeal and the ABC shall issue its decision not later than thirty days after the completion of the hearing. The ABC has scheduled a hearing on the Debtor's appeal on January 12, 1984.

The Court has carefully considered the propriety of staying any action on the Malt and Wine licenses dispute until the ABC renders its decision. However, for a number of reasons the Court considers it appropriate and necessary to address the matter at this time. First, both the ABC and the local Boards are governed by St.1983, c. 233, § 36 (M.G.L.A. c. 62C, § 49A) (which requires that no license shall be issued unless taxes are paid) and thus appellate review would be unavailing for the Debtor. *See generally Board of Ed. of City School District v. Harris,* 622 F.2d 599, 606–07 (2nd Cir.1979). The issue is purely a legal one and, as such, the Court need not defer to the agency because it involves neither the agency's particular expertise nor its fact-finding prowess. *Id.* Second, at issue here is the application of this statute in a bankruptcy proceeding and thus, ultimately, consideration of the Supremacy Clause. *See Samel v. City of Pittsfield Licensing Board,* 377 Mass. 906, 384 N.E.2d 1230 (1978) (Court need not defer to agency where constitutionality of a statute is in issue). Third, the determination of the "finality" element in the judicial review of an administrative action is a "pragmatic" one. *See Abbot Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Finally, the timing of a decision by the ABC is impossible to predict and since such a decision is effective immediately, in all likelihood there will be a substantial "gap period" before this Court can address this issue. Thus, the Debtor will be deprived of a needed and valuable license and the Debtor's business will be seriously hampered to the detriment of its creditors. *See* 11 U.S.C. § 105(a).

§ 1471(e). *See also* 11 U.S.C. § 541; *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). A liquor license constitutes a property interest sufficient to invoke the jurisdiction of the bankruptcy court. *See, e.g., In re Mason,* 18 B.R. 817 (Bkrtcy.W.D.Tenn.1982); *In re Gencarelli,* 14 B.R. 751 (Bkrtcy.D.R.I.1981).

11 U.S.C. § 362(a)(1) provides that:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . .

*Compare* House Report No. 95–595, 95th Cong., 1st. Sess. 340, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297 (1977) ("[A]ll proceedings are stayed, including . . . license revocation . . . proceedings.") *with* Senate Report No. 95–989, 95th Con., 2d. Sess. 50 (1978) (Senate report omits mention of license revocation proceedings).

In contrast to § 362(a)(1), § 362(b)(4) provides that:

[t]he filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

. . . .

(4) under section (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power", . . .

The Congressional House Report points out that § 362(b)(4) excepts proceedings by local government from the automatic stay when that body is suing a debtor "to prevent or stop violation of *fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws . . . .*" House Report No. 95–595, 95th Cong. 1st Session (1977) 342–3; Senate Report No. 95–989, 95th Cong. 2nd Session (1978) 51–2,

reprinted in [1978] U.S.Code Cong. and Adm.News 5963, 6299 (emphasis added).

Assimilating these two sections, courts have made a distinction between governmental actions which are aimed at obtaining a pecuniary advantage for the unit in question or its citizens, and those actions which represent a direct application of the unit's police or regulatory powers. The former are stayed under 11 U.S.C. § 362(a)(1); the latter are not. *See, e.g., Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768 (8th Cir.1981); *In re Thomassen,* 15 B.R. 907 (Bkrtcy.App.Cal.1981); *In re Gencarelli,* 14 B.R. 751 (Bkrtcy.D.R.I.1981); *In re Mason,* 18 B.R. 817 (Bkrtcy.W.D.Tenn. 1982).

This "pecuniary vs. police or regulatory" distinction has its origin in the rule of law set forth in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *Perez,* a bankrupt husband and wife were denied certain driving privileges under an Arizona statute which required them to satisfy a pre-petition judgment obligation resulting from a traffic collision. To the extent that this state statute had the purpose and effect of frustrating the discharge granted the 'Perez' under the federal bankruptcy laws, it was held to be violative of the Supremacy Clause of the United States Constitution. The Supreme Court stated that, in considering the validity of state laws in light of federal law touching the same subject, a court's function is to determine whether the challenged state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Perez, supra,* at 649, 91 S.Ct. at 1711 *citing Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The Supreme Court rejected the doctrine that state law may frustrate the operation of federal law as long as the state legislature, in passing its law, had some purpose other than one of frustration. *Perez, supra,* 402 U.S. at 651–52, 91 S.Ct. at 1712–13. Instead, the Supreme Court articulated a standard of review that focuses on the *effect* rather than the *purpose* of state law. *Id.* Such an approach is necessary because a standard that focuses on the

state's legislative purpose "would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law." *Perez, supra,* at 652, 91 S.Ct. at 1712.

■ In the case at bar, the purpose and effect of the state law (which requires a licensee-in-bankruptcy to either pay its pre-petition taxes or arrange a repayment plan with the Department of Revenue as a condition precedent to having its license renewed) is to frustrate both the priorities provision of the Bankruptcy Code and the confirmation standards of Chapter 11, *see* 11 U.S.C. § 1129(a)(9)(C) (allowing repayment of taxes over a period not exceeding six years from the date of assessment). This statute is not a valid exercise of the Commonwealth's police power but rather is an action that seeks the obtainment of a pecuniary advantage by doing indirectly that which the Commonwealth is prohibited from doing directly. *Compare Colonial Tavern, Inc. v. Byrne,* 420 F.Supp. 44 (D.Mass.1976) (suspension of liquor license upheld for repeated violation of a midnight closing hour regulation); *In re Canarico Quarries, Inc.,* 466 F.Supp. 1333 (D.P.R. 1979) (automatic stay inapplicable to Puerto Rico Environmental Quality Board's closure of site for violations of the Federal Clear Air Act); *In re Carmen Alessi,* 12 B.R. 96 (Bkrtcy.M.D.Ill.1981) (suspension of racing license upheld because of appearance of "fixing" a race). Accordingly, I find

that the provisions are violative of the Supremacy Clause and the law's enforcement is stayed pursuant to 11 U.S.C. § 362(a)(1).

■ With respect to the action of the Board in voting not to renew the Debtor's licenses, I do not find that the *purpose* of the Board was to frustrate federal law, but I find that the *effect* of its vote accomplishes the same purpose. This finding is made notwithstanding paragraph eighteen of the Board's decision, as I find that the sole basis for the Board's decision was the Debtor's non-payment of pre-petition taxes and thus the non-renewal of the Debtor's licenses was prohibited by 11 U.S.C. § 362(a)(1).[3] Accordingly, the Board, upon the Debtor's payment of all appropriate license fees required by law, is ordered to renew all of the Debtor's licenses for fiscal year 1984.[4]

As a final matter, the Court is concerned with the matters contained in the Commonwealth's Department of Revenue's letter to the Boston Licensing Board. *See* Note 1. While not directly a party to the action, the Commonwealth's attention is directed to 11 U.S.C. § 525 which provides in part as follows:

a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor

---

**3.** Even assuming that the Board's action falls within the exception to the automatic stay provisions of 11 U.S.C. § 362(b)(4), the Court would order the Debtor's licenses renewed pursuant to 11 U.S.C. § 105(a), as § 105(a) gives this Court additional powers "to issue [an] order ... that is necessary ... to carry out the provisions of this title." 11 U.S.C. § 105(a). *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 95–989, 95th Cong., 2d. Sess. 51 (1978); *see also In re Mason, supra,* at 821.

**4.** This Court does not consider today's decision to be in any way in conflict with the Ninth Circuit's opinion in *In re Anchorage Interna-*

*tional Inn, Inc.,* 718 F.2d 1446 (1983). *In Anchorage,* the sole issue was whether an Alaska statute creating priorities for certain creditors in the distribution of liquor license sales proceeds was preempted by federal bankruptcy law. *Holding that the state statute was not preempted by bankruptcy law,* the Ninth Circuit said that creditors who hold prior rights under the state statute are simply not in the "same class," as other creditors. At issue in the instant case is not the distribution of sales proceeds, but rather the renewal of an existing license. To the extent that *Anchorage* is contrary to the decision in the case at bar, the Court respectfully declines to follow that decision.

under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525 is a codification of, among other things, the rule of *Perez v. Campbell, supra, see In re Anderson,* 15 B.R. 399 (Bkrtcy.S.D.Miss.1981), and appropriate sanctions exist for the violation of this section. A copy of this Court's Memorandum and Order is ordered to be served upon the Commonwealth's Department of Revenue.