**In re J.F.D. ENTERPRISES, INC., Debtor.**

**Peter M. STERN, Trustee of J.F.D. Enterprises, Inc., Park West Bank and Trust Company, and Christerminator, Inc., Plaintiffs,**

**v.**

**COMMONWEALTH OF MASSACHUSETTS ALCOHOL BEVERAGE CONTROL COMMISSION, Defendant.**

Bankruptcy No. 93–41606–HJB.
Adv. No. 95–4148.

United States Bankruptcy Court,
D. Massachusetts.

June 26, 1995.

**344**

U.S. Atty. Gen. Janet Reno, U.S. Atty. Donald K. Stern, Washington, D.C., for U.S.

Peter M. Stern, Springfield, MA, Trustee in Bankruptcy.

Thomas O. Bean, Boston, MA, for Alcohol Beverage Control Com'n.

Jerry Katz, Springfield, MA, for Christerminator, Inc.

James H. Fierberg, Springfield, MA, for Park West Bank.

Eugene B. Berman, Springfield, MA, for Cray–Burke Co., Inc., Burke Beverage, Inc. and Commercial Distributing Co.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is an "Emergency Motion for an Order That the Massachusetts Alcoholic Beverage Control Commission Remove Liquor License from Delinquency List" (the "Motion"), filed by Christerminator, Inc. (the "Buyer") and the request of the Plaintiffs (the Trustee in Bankruptcy of J.F.D. Enterprises, Inc. [the "Trustee" and "Debtor", respectively], Park West Bank and Trust Company [the "Bank"] and the Buyer) in the above adversary proceeding for a permanent injunction against the said Alcoholic Beverage Control Commission (the "ABCC"). The gravamen of each request is the same—that the Court compel the ABCC to approve the transfer of a package goods store license for the sale of all alcoholic beverages (the "License") to the Buyer, free and clear of the delinquency list, set forth in Mass.Gen.Laws Ann., ch. 138, § 25 (West 1991) (the "Delinquency List").[1]

### *I. FACTS AND PRIOR PROCEEDINGS*

The relevant facts are not in dispute.

The Debtor, a retail seller of liquor, filed a petition in this Court under Chapter 11 of the Bankruptcy Code on June 10, 1993. After a bumpy ride by the Debtor through the reorganization process, the Court approved a stipulation between Debtor, the Bank, the Creditors' Committee and the United States Trustee, ordering the appointment of a

---

**1.** Pursuant to ch. 138, § 25, wholesalers are required to notify the ABCC, by certified mail, of the name of any licensee whose indebtedness to the wholesaler exceeds sixty days. Mass.Gen. Laws Ann. ch. 138, § 25. The ABCC is required to post the name and address of the delinquent licensee on a Delinquent List. *Id.* Massachusetts General Laws, chapter 138, § 25 further provides in relevant part:

> No licensee under this chapter shall sell or deliver, directly or indirectly, alcoholic beverages to a licensee whose name is posted on the delinquent list, except for payment in cash on or before delivery, and no licensee who is posted on the delinquency list shall purchase or accept delivery of any alcoholic beverage

except for payment in cash on or before delivery. Whenever the license of any licensee whose name appears on the delinquent list is transferred, the name of the transferee shall appear in the place and stead of the transferor, in the same manner as if no transfer occurred, but the provisions of this sentence shall not apply to transfers of licenses by assignees, court appointed receivers or trustees under a voluntary assignment for the benefit of creditors, provided that prior approval of such assignment is obtained from the commission after notice to all creditors has been given and reasonable time allowed for objections by such creditors.

Mass.Gen.Laws Ann. ch. 138, § 25.

Chapter 11 Trustee on November 10, 1993. Plaintiff Peter Stern, the Chapter 7 Trustee herein, was appointed Chapter 11 Trustee. On May 31, 1994, the Chapter 11 Trustee filed a motion seeking leave to sell the debtor's assets, free and clear of liens and encumbrances, pursuant to 11 U.S.C. 363(b) and (f). The said motion sought leave to sell the assets by private sale and turn the proceeds over to the Bank, holder of a first security interest on all of the assets, less a previously agreed to payment to the estate. The assets to be sold included the License issued by the Town of West Springfield, Massachusetts and standing in the name of the Debtor. The sale was opposed by the Official Unsecured Creditor's Committee. For various reasons, many of which have now been espoused by the ABCC, the Committee alleged that the Court was without jurisdiction to order the sale of the License free and clear of the Delinquency List. A hearing was held on July 13, 1994 and, after extensive argument by the Chapter 11 Trustee, as well as counsel for the Buyer, the Bank and the Committee, the Court denied authorization for the sale, on the grounds the sale did not provide a significant benefit to the estate.[2]

On August 26, 1994, the Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code. Stern was subsequently appointed the Chapter 7 Trustee. The Trustee then again filed a motion for leave to sell the assets, including the License, but this time at public auction. The sale was objected to by the Bank, the Committee and reportedly a liquor wholesaler, who neither objected in writing nor appeared. A hearing was held on October 19, 1995, but with a much different result. This time, the Trustee did not concede the Bank's entitlement to the proceeds. The Trustee alleged that, inasmuch as the Bank's first security interest in the License was not free of the Delinquency List under state law, and the Delinquency List could be avoided by the Chapter 7 Trustee, the rights under the Delinquency List could be preserved for the benefit of the estate.[3] Again, the Committee argued against the sale on the grounds that the Court had no jurisdiction to order a sale of the License, free and clear of the Delinquency List. Counsel for the Committee advised the Court that he had notified the ABCC and the Massachusetts Attorney General's Office of the hearing, although neither had chosen to attend. The alleged objecting liquor wholesaler also did not appear. After again extensive argument, the Court overruled the objections of the Committee, the alleged liquor wholesaler and the Bank.[4] The Court also ruled that the ABCC and the Massachusetts Attorney General's Office had actual and/or constructive notice of the hearing, and having failed to respond or appear, had waived any objection to the sale, free and clear of liens and encumbrances, if any.[5] The Court, therefore, authorized Stern to sell the assets, including the License, free and clear of liens and encumbrances, at public auction. On or about November 15, 1994, Stern sold the License at public auction to the assignor of the Buyer for the sum of One Hundred Thousand ($100,000.00) Dollars, subject to approval of the transfer, free and clear of liens and encumbrances, by the Town of West Springfield and the ABCC.[6]

---

**2.** After inquiry of the Chapter 11 Trustee, it became clear that the moneys reasonably expected to be paid to the estate would not exceed the total of the administrative claim expected to be filed by the Chapter 11 Trustee.

**3.** This argument was not well-developed at the hearing and the Court expresses no view thereon. No issue is presently before the Court relative to the validity, perfection, priority or enforceability of the Bank's security interest.

**4.** The Court ruled that the Committee had no standing to object, as it ceased to exist upon conversion of the case to Chapter 7. The alleged liquor wholesaler's objection was overruled as it failed to appear. The Bank's objection was re-

solved, with its consent, when the Court ruled that the alleged lien of the Bank would attach to the sale proceeds.

**5.** No party has raised that waiver as dispositive of the instant dispute. Because of colorable issues raised by the Commonwealth as to whether the Delinquency List is an "encumbrance" as set forth in the motion to sell the License, this court is loathe to find that the Commonwealth's failure to appear at the hearing was a knowing waiver of its arguments relative to the Delinquency List.

**6.** Both approvals are necessary for transfer. *See* Mass.Gen.Laws Ann., ch. 138 § 15A (West 1991). The Plaintiffs also claim that it was their joint

On motion of the Trustee to confirm the sale, the Court, on December 20, 1994, again ordered the sale, free and clear of all liens and encumbrances with said liens and encumbrances attaching to the proceeds of the sale.

On or about January 9, 1995, the License Commission for the Town of West Springfield, Massachusetts approved the transfer of the License to the Buyer. However, on May 4, 1995, the ABCC approved the transfer of the License to the Buyer, *subject* to the replacement of the Buyer's name on the Delinquency List. The substitution of the Buyer on the Delinquency List prohibits its purchase of liquor products from liquor wholesalers on credit, unless and until over $400,-000.00 in obligations of the Debtor to liquor wholesalers is paid. In view of the value of the License as determined by the said public auction, the action of the ABCC negates any real possibility that the sale ordered by the Court could be consummated.

On May 25, 1995, the Buyer filed the instant Motion, seeking an emergency hearing. The Buyer sought an emergency determination on the grounds that the proposed lessor for the Buyer's business premises had allegedly refused to entertain a lease for the Buyer absent verification that the License had been finally transferred to the Buyer. The Court denied the request for emergency determination and scheduled an expedited hearing for June 7, 1995. In the interim, the Plaintiffs filed the instant adversary proceeding and asked for a hearing on a motion seeking a temporary restraining order against the ABCC. That hearing was similarly scheduled for June 7, 1995. Oppositions were filed by the ABCC and three (3) liquor wholesalers (the "Wholesalers")[7] now represented by former counsel to the Creditors Committee.[8] At the June 7, 1995 hearing, the Court denied the request for a temporary restraining order, in that a temporary restraining order alone would not have satisfied the purported contingency under the

proposed lease, namely, a final determination that the Buyer would enjoy the benefits of the License free and clear of the Delinquency List. The Court then took the remaining issues in the Motion and the Adversary Proceeding under advisement.

## II. POSITIONS OF THE PARTIES

The ABCC and the Wholesalers (jointly, the "Respondents") make several arguments in support of either the propriety of the ABCC action or the inability of this Court to determine otherwise. First, the Respondents argue that neither the Buyer, nor any of the remaining Plaintiffs, have standing. The Respondents claim that the sale is complete to the Buyers and the Buyer's remedies lie exclusively with the administrative process and/or subsequent state court action contemplated under state law. They point out that the License is now in the name of the Buyer and claim that the Trustee no longer has any property interest therein. Similarly, they argue that, because the License has already been transferred, it is no longer property of the estate. Therefore, the Court has no jurisdiction over the res. Second, the Respondents claim that the Court has no jurisdiction over the ABCC. They assert that, inasmuch as the ABCC has not filed a proof of claim in the case, the ABCC has not waived its sovereign immunity, pursuant to 11 U.S.C. § 106(b). Furthermore, to the extent that the provisions of 11 U.S.C. § 106(a) would abrogate that immunity, the Respondents claim that the statute is unconstitutional as contravening the Eleventh Amendment to the United States Constitution. Third, Respondents assert that the retention of the Buyer on the Delinquency List is neither a "lien" nor an "encumbrance", and therefore not in contravention of this Court's sale orders. Fourth, Respondents claim that ch. 138, § 25 provides for removal from the Delinquency List only upon discharge of the underlying debt and that, since the debt can not be discharged under

---

intention and agreement that the sale be free and clear of the Delinquency List.

**7.** The objecting Wholesalers are Cray Burke., Inc., Commercial Distributing Co. and Burke Beverage, Inc.

**8.** The Court expresses no opinion at this time as to the propriety of that representation.

11 U.S.C. § 727(a)(1), the state statute can not be abrogated.[9] Fifth, Respondents argue that the statute establishing the Delinquency List is a valid exercise of the Commonwealth's police power. The purpose of the statute, they say, is to avoid liquor retailers from being "tied" to select liquor wholesalers. By preventing retailers from becoming heavily indebted to such wholesalers, a legitimate state interest is protected. Finally, they argue that the Twenty–First Amendment to the United States Constitution prohibits this Court from ordering the Commonwealth to remove the Buyer from the Delinquency List.

The Plaintiffs' view is decidedly different. First, they argue that the Court retains jurisdiction over the controversy inasmuch as the sale of License has not been completed. Second, they assert that, inasmuch as the constitutionality of the provisions governing sovereign immunity under § 106 has not been tested, the Plaintiffs' argument is premature. Third, they claim that the ABCC's refusal to remove the License from the Delinquency List is an "encumbrance", and therefore, violates this Court's orders authorizing the sale "free and clear of liens and encumbrances." Fourth, the Plaintiffs assert that the operation of ch. 138, § 25 is not a valid exercise of the Commonwealth's police powers, and therefore, is invalid under the Supremacy Clause of the United States Constitution. Finally, the Plaintiffs' assert that the Commonwealth's enactment of ch. 138, § 25 does not fall within the protective umbrella of the Twenty–First Amendment to the United States Constitution.

## III. DISCUSSION

### A. Standing and Property of the Estate

█ The ABCC asserts that the bankruptcy court has no jurisdiction over the instant matter because the License has already been transferred to the purchaser—a non-debtor "licensee." It argues that the licensee's right to sell liquor on credit is not property of the estate within the meaning of § 541, and therefore, not subject to the bankruptcy court's jurisdiction.

There could be no dispute that, prior to its transfer, the License was property of the estate. See In re Nejberger, 120 B.R. 21 (E.D.Pa.1990), aff'd, 934 F.2d 1300 (3rd Cir. 1991) (debtor's estate retained property interest in expired liquor license capable of renewal post-petition); In re Hoffman, 65 B.R. 985, 986 (D.R.I.1986) ("[I]t is clear beyond cavil that [a] liquor license, whatever may be its dimension, constitutes "property" of the estate"); Aegean Fare, Inc. v. Licensing Board for the City of Boston (In re Aegean Fare, Inc.), 35 B.R. 923, 927 (Bankr. D.Mass.1983) ("A liquor license constitutes a property interest sufficient to invoke the jurisdiction of the bankruptcy court"). Section 541(c)(1)(A) provides:

> Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor[.]

11 U.S.C. § 541(c)(1)(A). See generally, J. Queenan, Chapter 11 Theory and Practice: A Guide to Reorganization, § 9.10 (1994). See also U.S. v. Battley (In re Kimura), 969 F.2d 806 (9th Cir.1992). A sale of property of the estate (e.g, a liquor license) must be authorized by the bankruptcy court. See 11 U.S.C. § 363. Although this Court has already authorized the sale of the License by its orders of November 15, 1994 and December 20, 1994, the sale has not been consummated. The parties intended that the sale be free of the Delinquency List. The ABCC approved the transfer of the License subject to the Delinquency List. Absent the Delinquency List, the License would have included the right to purchase liquor on credit. In the commercial world, the right to purchase on credit has substantial value. By transferring the License but prohibiting the holder

---

9. This argument is not separately discussed herein in that it is deemed frivolous. It is obvious that the "discharge" under ch. 138, § 25 and the "discharge" under 11 U.S.C. § 524 of the Bankruptcy Code are different and unrelated. In any event, a debtor's discharge under the Bankruptcy Code is irrelevant to the power of the Trustee in Bankruptcy to administer property of the estate.

thereof from buying on credit, the ABCC transferred the License without its full bundle of rights and reduced its value. Further, even assuming that the buyer has obtained "title" to the License, it is not compelled to pay any consideration to the Trustee. The ABCC's refusal to remove the License from the Delinquency List has, therefore, the effect of compelling the estate to either (1) pay to the affected wholesalers the amount of the delinquency, in contravention of the distribution scheme of the Bankruptcy Code, or (2) reduce the purchase price of the License by the amount of that delinquency. Alternatively, the Buyer would be required to return the License to the estate. Each of the Plaintiffs has a personal stake in the outcome of this dispute. That stake provides the basis for the standing of each. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). Therefore, insofar as the sale has not been consummated, the Court retains jurisdiction over the uncompleted sale of the License and the Trustee, the Buyer and the Bank each have standing to complain of the actions of the ABCC.

The ABCC also argues that the Buyer's remedies lie only in the administrative process and/or subsequent state court action contemplated under state law. This argument is hardly compelling as the Buyer's remedies may negatively affect the estate. Certainly to the extent that the actions of the ABCC contravened the provisions of the Bankruptcy Code and interfered with the administration of this estate, this Court is not compelled to wait while the issue wends its way through some state administrative process. U.S. Const. Art. 6, cl. 2; *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23 (1824). *See also Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

## B.  The Delinquency List

■ Having determined that each of the Plaintiffs has standing and that this Court has jurisdiction over the License, this Court will address the substantive issues surrounding the ABCC's substitution of the Buyer on the Delinquency List.

Through the arguments presented at the hearing and in the post-hearing briefs, the parties have focused on whether the ABCC's substitution of the Buyer on the Delinquency list creates a "lien" or "encumbrance." That enigmatic inquiry, however, is not central to this dispute. The actual issue before the Court is whether the ABCC's substitution of the Buyer on the Delinquency List, pursuant to ch. 138, § 25, is in violation of the automatic stay pursuant to § 362(a).

Section 362(a) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of," among other things:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(3). Section 362(a)(3) applies to actions, whether judicial or private, seeking to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. 2 COLLIER ON BANKRUPTCY, § 362.04 (15th ed.1995).

The critical language of § 362(a)(3) for purposes of this analysis is "any act ... to exercise control over property of the estate." This clause was added to § 362(a)(3) in the 1984 Bankruptcy Amendments. Although there is no legislative history on the scope or meaning of the term "control", the bankruptcy court in *Beker Industries Corp. v. Florida Land and Water Adjudicatory Commission (In re Beker Industries Corp.),* 57 B.R. 611 (Bankr.S.D.N.Y.1986), suggested that the control provision of § 362(a)(3) is to be defined by the underlying congressional purposes of § 362(a)(3) under the Bankruptcy Reform Act of 1978—that is, to prevent dismemberment of the estate and assure its orderly distribution. *Id.* at 626. An action dismembers an estate by eliminating or reducing the potential value of an asset of the estate. *See Official Committee of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines, Inc.),* 107 B.R. 832 (Bankr. S.D.N.Y.1989) (action by debtor's corporate parent to take stock deduction and defeat debtor's ability to carry forward its net operating losses to offset its future income violated § 362(a)(3)); *see also In re National Cattle Congress,* 179 B.R. 588, 597 (Bankr.

N.D.Iowa 1995) (Iowa's Racing and Gaming Commission's act of revoking debtor's dog-racing license destroyed value of property to the estate; automatic stay was violated under § 362(a)(3)).

In the instant case, the ABCC's substitution of the Buyer on the Delinquency List is an act which has the effect of eliminating or reducing the potential value of the License to the estate. Therefore, it is an act to control property of the estate in violation of § 362(a)(3).

■ The ABCC argues that the Delinquency List is a valid exercise of its regulatory and police power. However, no exceptions exist in 11 U.S.C. § 362(b) for the exercise of police or regulatory power where the stay violation arises solely under § 362(a)(3). *See Weaver v. City of Knoxville (In re Thomas),* 179 B.R. 523, 526 (Bankr. E.D.Tenn.1995); *Gumport v. ICC (In re Transcon Lines),* 178 B.R. 228, 235 (Bankr. C.D.Cal.1995). Sections 362(b)(4) and (5), the only sections of 362 which arguably relate to the ABCC's arguments, apply only to the stay provisions of § 362(a)(1) and (2), respectively.[10]

■ However, even assuming that the control provision under § 362(a)(3) "is governed by the contours of § 362(b)(4)," *see Beker*

*Industries Corp.,* 57 B.R. at 626, this Court believes that the operation of the Delinquency List does not represent a direct application of the Commonwealth's police or regulatory powers, but rather constitutes an effort to obtain a pecuniary advantage for the Commonwealth or its citizens. *See In re Aegean Fare, Inc.,* 35 B.R. 923, 927 (Bankr.D.Mass. 1983); *Hoffman,* 65 B.R. at 988–89.

In the *Aegean Fare* case, Bankruptcy Judge Thomas W. Lawless, Jr. found that a liquor licensing board's refusal to renew the debtor's liquor license, pursuant to a state statute requiring the licensee to pay delinquent taxes or enter into a repayment plan as a condition to license renewal, violated the automatic stay. Relying on the Supreme Court's reasoning in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704[11], the bankruptcy court held that the effect of the statute was to frustrate the policies of the Bankruptcy Code. 35 B.R. at 928. Judge Lawless held that "[the] statute [was] not a valid exercise of police power but rather [was] an action that [sought] the obtainment of a pecuniary advantage by doing indirectly that which the Commonwealth is prohibited from doing directly." *Id.*

The ABCC has submitted the affidavit of Stuart P. Krusell, Chair of the Massachu-

---

**10.** Section 362(a) provides in part:

> Except as provided in subsection (b) of this section, a petition ... operates a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1)–(2).

> Section 362(b) provides in part:
> The filing of a petition ... does not operate as a stay—
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental units's police or regulatory power;

> (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental units' police or regulatory power.

11 U.S.C. § 362(b)(4)–(5).

**11.** In the *Perez* case, the debtors were denied driving privileges under an Arizona statute which required them to satisfy pre-petition judgment obligations arising from traffic violations. Relying on the Supremacy Clause, the Supreme Court held that the valid safety purpose could not save the statute since its effect was to frustrate the debtor's discharge under federal bankruptcy law. The state statute, therefore, violated the Supremacy Clause of the United States Constitution. The *Perez* court held that when assessing the validity of a state statute in light of federal law touching upon the same subject matter, the court must determine whether the state statute " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Perez,* 402 U.S. at 649, 91 S.Ct. at 1711, *quoting, Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

setts Alcoholic Beverage Control Commission, as an exhibit to its memorandum. Mr. Krusell states that:

> [t]he purpose of the Delinquency List is to prevent the illegal coercion and/or unlawful credit inducements between wholesalers and retailers in the sale and delivery of alcoholic beverages. It is designed to avoid the evils of the "tied house", that is, the evil resulted from the control by manufacturers, wholesalers, or importers, through the power of credit, of liquor retailers.

However, a statement of purpose alone will not save a state statute in conflict with federal law. As the *Perez* court explained:

> [w]e can no longer adhere to the aberrational doctrine ... that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all of our Supremacy Clause cases, such a doctrine would enable the state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law.

402 U.S. at 651–52, 91 S.Ct. at 1712. In so ruling, the Supreme Court articulated a standard of review that focuses on the *effect* rather than the purpose of state law. *Aegean Fare, Inc.*, 35 B.R. at 927.

Even giving weight to the foregoing statement of purpose, the Plaintiffs assert that the evolution of the statute has evidenced a lessening concern over countering the evils of "tied-houses." The statute, in its original form, conferred on the ABCC the blanket power to revoke the licenses of both retailers and wholesalers who violated the statute. Mass.Gen.Laws Ann. ch. 376, § 2 (1933) (current version at Mass.Gen.Laws Ann. ch. 138, § 25 (West 1991)). In 1968, the ABCC's blanket power of revocation of licenses was

removed. *See* Mass.Gen.Laws Ann. ch. 376, § 2 (1933) (amended by Mass.Gen.Laws Ann. ch. 574, § 1 (1968)) (current version at Mass. Gen.Laws Ann. ch. 138, § 25 (West 1991)). However, even the 1968 statute provided that the right to purchase inventory on a cash basis was suspended if the license remained on the Delinquency List for 210 or more consecutive days. *Id.* In 1981, the legislature eliminated the ABCC's power to suspend the licenses of delinquent licensees. Mass.Gen.Laws Ann. ch. 376, § 2 (1933) (amended by Mass.Gen.Laws Ann. ch. 262 (1981)) (current version at Mass.Gen.Laws Ann. ch. 138, § 25 (West 1991)).

Furthermore, since the apparent purpose of the statute was to remove the credit "ties" between wholesalers and retailers, it is odd that the statute requires that, on transfer, a new entity would be substituted on the List. Presumably, a transferee would not be "tied" to a wholesaler's dealing arrangements with a previous licensee, absent assumption by the transferee of the obligations owed by the transferor to the latter's wholesale suppliers. However, with the exceptions noted below, the statute requires that a liquor license may be transferred only if the transferee's name is substituted on the Delinquency List. Mass.Gen.Laws Ann. ch. 138, § 25. Of course, the reason for this retention may have been to prevent a licensee from avoiding the effect of the statute by transferring a liquor license to a new corporation with the same principals as the transferor. Presumably, to meet this concern, the statute's exception for assignees, court-appointed receivers or trustees under a voluntary assignment for the benefit of creditors requires notice to all creditors and approval by the ABCC. *Id.* However, if the exceptions contained in the statute permit sales free and clear of the Delinquency List by various functionaries, including the minimally regulated assignee for the benefit of creditors, it is illogical that the exception would not extend to a highly regulated functionary, such as a trustee in bankruptcy. The Respondents say only that the omission of bankruptcy trustees was purposeful.[12] However, if bankruptcy trustees

---

**12.** The Plaintiffs argue that the inclusion of bankruptcy trustees was unnecessary because of the

Supremacy Clause. That seems to this Court to

were purposefully excluded from the exception, it seems less likely that statute is premised on "police or regulatory" objectives.

This Court believes that the operation of the Delinquency List in this case is not, for the purposes of § 362(b)(4) and (b)(5), an appropriate exercise of the Commonwealth's police or regulatory powers. First, while the statute may have been originally enacted with the public policy goal of countering the "tied-houses" phenomenon, the effect of the statute is now that of a debt collection measure sought to be used to disrupt the distribution scheme of the Bankruptcy Code. *See Hoffman,* 65 B.R. 985. The narrowing effects of the amendments of ch. 138, § 25 fail to serve the original public policy concerns since (1) the ABCC no longer has the blanket authority to revoke the licenses of wholesalers and retailers that violate the statute, and (2) a delinquent retailer is permitted to purchase its inventory on a cash basis. Second, the exception permitting unregulated assignees to convey a liquor license free of the Delinquency List, while restricting regulated functionaries such as trustees in bankruptcy, constitutes a breakdown in the ABCC's argument that the statute serves any broad public policy goals.

As the operation of the state law appears to be more in the nature of a debt collection statute than an exercise of the Commonwealth's "police or regulatory" powers, it would not be exempt from the automatic stay under the exceptions set forth under §§ 362(b)(4) or (5), even were they to apply. The substitution of the Buyer on the Delinquency List was, therefore, a violation of § (a)(3) of the Bankruptcy Code. As such, the Delinquency List must yield to the Supremacy Clause of the United States Constitution.

### C. Twenty–First Amendment

■ Having determined that the operation of the Delinquency List set forth in ch. 138, § 25 violated the automatic stay, the Court must address whether the ABCC's refusal to remove the Buyer from the Delinquency List is a valid exercise of the Commonwealth's regulatory powers under the Twenty–First

make more sense than the conclusionary argu-

Amendment to the United States Constitution.

Section 2 of the Twenty–First Amendment provides:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. Const. amend. XXI, § 2.

■ Notwithstanding the states' broad authority to regulate the importation and transportation of liquor within their jurisdiction, the Supreme Court has held that where such a state regulatory statute squarely conflicts with a federal enactment, the state must evince proof that a direct interest under the Twenty–First Amendment is being advanced by the state statute. *See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 716, 104 S.Ct. 2694, 2709, 81 L.Ed.2d 580 (1984). In the *Capital Cities* case, the Supreme Court held that a state regulation prohibiting cable television systems operating in Oklahoma from retransmitting out-of-state signals containing alcoholic beverage commercials was preempted by specific FCC regulations, and therefore, not protected by the Twenty–First Amendment. The Supreme Court stated:

> [T]he application of Oklahoma's advertising ban to the importation of distant signals by cable television operators engages only indirectly the central power reserved by § 2 of the Twenty–First Amendment— that of exercising "control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." ... [W]hen ... a state regulation squarely conflicts with the accomplishment an execution of the full purposes of federal law, and the State's central power under the Twenty–First Amendment of regulating, times, places and manner under which liquor may be imported and sold is not directly implicated, the balance between state and federal power tip decisively in favor of federal law, and enforcement of the state statute is barred by the Supremacy Clause.

ment of the Respondents.

*Id.,* 467 U.S. at 715–16, 104 S.Ct. at 2709 (citation omitted).

Also of great relevance is the *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). In that case, the Supreme Court held that the Twenty–First Amendment provided no shelter for violation of the Sherman Act.

> [T]here is no bright line between federal and state powers over liquor. The Twenty–First Amendment grants the states virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. Although States retain substantial discretion to establish other liquor regulations, those controls may be subject to the federal commerce power in appropriate situations. The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a "concrete case."

*Id.* at 110, 100 S.Ct. at 946 (citation omitted). The Supreme Court added that "[t]o draw a conclusion ... that the Twenty–First Amendment has somehow operated to 're-peal' the Commerce Clause [13] wherever regulation of intoxicating liquors is concerned, would ... be an absurd oversimplification." *Id.* at 109, 100 S.Ct. at 945, *quoting, Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 331–32, 84 S.Ct. 1293, 1297–98, 12 L.Ed.2d 350 (1964).

The Plaintiffs argue that the Delinquency List does not directly relate to the state's interest in the transportation, importation, delivery or use of alcohol. The Respondents rely on the bankruptcy decision of *In re G. Heileman Brewing Co., Inc.,* 128 B.R. 876 (Bankr.S.D.N.Y.1991). In that case, the court held that an Oregon statute preventing manufacturers from terminating alcohol distribution agreements would prevail over a debtor's right to reject that executory contract under 11 U.S.C. § 365, due to the provisions of the Twenty–First Amendment. Re-jecting the notion that a state liquor law must have a public health, safety or welfare purpose, the court emphasized that the plain language of the Twenty–First Amendment refers to the transportation, importation, delivery or use of liquor. *Id.* at 884. The court determined that the Oregon statute fulfilled the purpose behind the Twenty–First Amendment even though it appeared to protect Oregon distributors from competition. Recognizing that the Supreme Court requires proof of a state's direct interest under the Twenty–First Amendment, the court concluded that the Oregon statute was enacted as a direct exercise of Oregon's core power to regulate alcohol and was "a necessary component to Oregon's valid state interest in assuring stable, long-term distributor agreements." *Id.* at 885. The Respondents maintain that the Delinquency List governs the distribution and delivery of alcoholic beverages by wholesalers to retailers—therefore, it falls expressly within the scope of the Twenty First Amendment. The Respondents are wrong.

The operation of the Delinquency List does not directly regulate the time, place and manner under which liquor may be sold, as was true in the *Heileman Brewing* case. In this case, liquor may be freely purchased and sold, notwithstanding the Delinquency List, if the transaction is for cash. The Delinquency List is about credit, not about import, transport and use. It is a tool used to ensure payments for liquor wholesalers and, as such, squarely conflicts with the priority scheme of the Bankruptcy Code. And in this case, the operation of the statute conflicts with the effective administration of the assets of the estate. As the Twenty–First Amendment has not repealed the Commerce Clause, so has it also not repealed the Bankruptcy Clause [14]. The Twenty–First Amendment is inapplicable to the resolution of the dispute here presented.

---

**13.** The United States Constitution provides that:

> Congress shall have the power ... [t]o regulate Commerce with foreign Nations, among the several States, and with Indian Tribes.

> U.S. Const. art. I, § 8, cl. 3.

**14.** The United States Constitution provides that:

> Congress shall have the power ... [t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States.

> U.S. Const. art. I, § 8, cl. 4.

## D. Sovereign Immunity

Finally, the ABCC maintains that the Court does not have jurisdiction over the ABCC for two reasons. First, the ABCC asserts that it has not waived its sovereign immunity by filing a proof of claim pursuant to § 106(b).[15] Second, the ABCC argues that Congress does not have the authority to abrogate sovereign immunity under the Bankruptcy Clause of the United States Constitution and, therefore, § 106(a) is unconstitutional as contravening the Eleventh Amendment to the Constitution.

Section 106, as amended by the 1994 amendments to the Bankruptcy Code[16], provides in relevant part:

(a) Notwithstanding any assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105 ... 362, 363 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment award-

ing a monetary recovery, but not including an award of punitive damages....

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district of the United States....

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(a)(1)–(4), (b) (West 1994).

■ The ABCC's arguments are meritless. It seeks to employ the Eleventh Amendment prohibitions with respect to monetary recovery against states and apply the Amendment to this Court's injunctive and declaratory powers. This Court's power to enjoin the members of a state commission from violating a provision of the Bankruptcy Code is not barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[17]

---

**15.** The ABCC has not filed a proof of claim in this case.

**16.** *See* Bankruptcy Reform Act of 1994, Publ.L. 103–394, § 113, 108 Stat. 4106, 4117–4118 (1994). Section 106 became immediately effective on the date of enactment, October 22, 1994, and applied to all cases that were filed prior or subsequent to the effective date. Accordingly, § 106(a), as amended, applies to the instant controversy.

**17.** Furthermore, in the case of *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), while the Supreme Court generally rejected the trustee's argument that a bankruptcy court's in rem jurisdiction overrides sovereign immunity, it distinguished actions against the government to recover a sum of money from actions to recover specific property of the estate. 503 U.S. at 38–39, 112 S.Ct. at 1017. Specifically, the Supreme Court stated: [W]e have never applied an in rem exception to the sovereign-immunity bar against monetary

recovery and have suggested no such exception exists ... Nor does [*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)] establish such an exception, or otherwise permit the relief requested here. That case upheld a Bankruptcy Court order that the IRS turn over tangible property of the debtor it has seized before the debtor filed for bankruptcy protection. A suit for payment of funds from the Treasury is quite different from a suit for the return of tangible property in which the debtor retained ownership. The Court's opinion in *Whiting Pools* contains no discussion of § 106(c), and nothing in it suggests that an order granting monetary recovery from the United States would be proper.
*Id.* (citations omitted). The *Nordic Village* decision suggests that a suit to recover specific property of the estate is not necessarily barred under the doctrine of sovereign immunity.

■ Moreover, it is clear that the ABCC's immunity is properly abrogated by § 106(a).

The ABCC relies on the Eleventh Circuit decision of *Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016 (11th Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995). In that case, the court observed that the Supreme Court has held that Congress possesses the power to abrogate rights reserved by the Eleventh Amendment when it enacts legislation under the auspices of (1) Section 5 of the Fourteenth Amendment, or (2) the Interstate Commerce Clause. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (finding abrogation proper in legislation passed pursuant to section 5 of the Fourteenth Amendment); *Pennsylvania v. Union Gas*, 491 U.S. 1, 109 S.Ct. 2273 (finding abrogation proper in legislation passed pursuant to the Commerce Clause). The Eleventh Circuit refused to extend those decisions to cover Congress' attempted abrogation of the States' sovereign immunity under the Indian Commerce Clause. The ABCC asserts that the same restriction of congressional power suggested in the *Seminole Tribe* case should apply to congressional abrogation under the Bankruptcy Clause. The *Seminole Tribe* decision is now before the Supreme Court.

The ABCC also relies on concurring opinions in the Supreme Court case of *Hoffman v. Connecticut Income Dept.*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In the *Hoffman* case, the issue was whether § 106(c) (prior to the statute's amendment) abrogated sovereign immunity to enable a monetary recovery against a state. A plurality of the Supreme Court determined that the former § 106(c) did not permit a bankruptcy court to issue monetary relief against a state, the Court ruling that the waiver language set forth in the former § 106(c) was not unequivocally expressed. *Id.* at 102, 109 S.Ct. at 2823. The ABCC points however to the concurring opinions of Justices Scalia and O'Connor. Those Justices asserted that, independent of the waiver ruling agreed to by the members of the plurality, they believed that Congress lacked any authority under the Bankruptcy Clause to abrogate the states' immunity under the Eleventh Amendment. *Id.* at 105, 109 S.Ct. at 2824–25 (Scalia, J., O'Connor, J.).

But this Court has also read the dissent in *Hoffman.* Justice Marshall, leading four dissenters, noted:

> [W]e held [in *Union Gas*] [18] that Congress has the authority under the Commerce Clause to abrogate the States' Eleventh Amendment Immunity. I see no reason to treat Congress' power under the Bankruptcy Clause any differently, for both constitutional provisions give Congress plenary power over national economic activity.

492 U.S. at 111, 109 S.Ct. at 2828 (J. Marshall, J. Brennan, J. Blackmun, and J. Stevens, dissenting) (*citing*, THE FEDERALIST No. 42 at 271 (J. Madison) (C. Rossiter ed. 1961)). In *The Federalist*, James Madison commented that:

> [t]he power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different states, that the expediency of it seems not likely to be drawn into question.[19]

THE FEDERALIST No. 42 (James Madison).

This Court finds the argument raised by the *Hoffman* dissent more compelling. Like the Commerce Clause, whose efficacy is dependent on the authority to control commerce between the states, the subordination of the states' rights to a federal bankruptcy system is a necessary pre-condition to its efficacy. The Bankruptcy Code would soon unravel and the Bankruptcy Clause would be rendered meaningless, if the states were free to seize, levy upon or control property of a bankruptcy estate, immune to any restraint by the federal courts. *Sparkman v. State of Florida Dept. of Revenue (In re York–Hannover Developments, Inc.)*, 181 B.R. 271 (Bankr.E.D.N.C.1995).

---

**18.** *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

**19.** President Madison appears to have been overly optimistic.

*IV. 28 U.S.C. § 2403*

■ Section 2403 of title 28 provides in relevant part:

[i]n any action, suit or proceeding in a court of the United States to which the United States ... is not a party, where in the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403. In accordance with this statutory provision, the Court shall certify the to the United States Attorney General the existence of the constitutional challenge to 11 U.S.C. § 106(a) (1994) by the ABCC. Since there are exigent circumstances in the instant case, and since compliance with this statute is not a jurisdictional requirement[20], the Court shall not delay the entry of a final judgment and order. The Court shall forthwith direct a copy of this memorandum of decision, order and judgment to the United States Attorney General in order that the Attorney General may intervene and appeal the judgment and order. The Court hereby extends the time for which the United States may appeal from this order an additional twenty (20) days pursuant to Fed.R.Bankr.P. 8002. *See Melvin v. Bank of Mount Dora (In re Melvin)*, 13 B.R. 96 (Bankr.S.D.Fla. 1981).[21]

*V. CONCLUSION*

For the foregoing reasons, the Court allows the Buyer's Motion for an Order that the Massachusetts Alcoholic Beverage Control Commission Remove Liquor License from Delinquency List. The Court enters judgment on the Complaint in favor of the Plaintiffs and grants the essence of the Permanent Injunction sought therein. A separate judgment and order will issue in conformity with this memorandum of decision.

*JUDGMENT*

For the reasons set forth in the separate Memorandum of decision issued on June 26, 1995, the Court enters judgment in favor of the Plaintiffs on the Complaint and permanently enjoins the Commonwealth of Massachusetts, Alcohol Beverage Control Commission, its agents and employees from failing, refusing or neglecting to

(a) reissue its approval of the transfer of the retail package goods license issued by the Town of West Springfield, Massachusetts and formerly standing in the name of the J.F.D. Enterprises, Inc. to Christerminator, Inc., *free and clear* of the Delinquency List otherwise imposed by Mass. Gen.Laws Ann. ch. 138, § 25 (the "Delinquency List"); and

(b) to remove the name of Christerminator, Inc. from the Delinquency List on account of obligations originally incurred by J.F.D. Enterprises, Inc.

Plaintiffs' request for sanctions and costs is denied.

Furthermore, in accordance with 28 U.S.C. § 2403, the Court certifies to the United States Attorney General a constitutional challenge to 11 U.S.C. § 106(c) (1994) made by the said Alcoholic Beverage Control Commission. The Court shall afford the United States only an additional twenty (20) days to intervene and appeal this judgment in accordance with Fed.R.Bankr.P. 8002.

*ORDER*

For the reasons set forth in the separate Memorandum of decision issued on June 26,

---

**20.** Several courts have held that compliance with the statute is not a jurisdictional requirement. *See e.g., Tonya K. by Diane K. v. Board of Education*, 847 F.2d 1243 (7th Cir.1988); *Wallach v. Lieberman*, 366 F.2d 254 (2d Cir.1966); *Thatcher v. Tennessee Gas Transmission*, 180 F.2d 644 (5th Cir.1950), *cert. denied*, 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609 (1950).

**21.** In *In re Melvin*, the bankruptcy court dismissed the debtor's complaint on the ground that creditor's security interest, acquired prior to the Bankruptcy Code's enactment of 11 U.S.C. § 522(f), could not be constitutionally applied to § 522(f). Although the court had failed to certify the question to the United States Attorney General prior to entering judgment, it afforded the Attorney General an opportunity to intervene by extending the appeal period an additional twenty days under Bankruptcy Rule 8002. 13 B.R. at 97–98.

1995, the Court allows the "Emergency Motion for an Order that the Massachusetts Alcoholic Beverage Control Commission Remove Liquor License from Delinquency List" filed by Christerminator, Inc. In accordance with 28 U.S.C. § 2403, the Court certifies to the United States Attorney General a constitutional challenge to 11 U.S.C. § 106(c) (1994) made by the said Alcoholic Beverage Control Commission. The Court shall afford the United States only an additional twenty (20) days to intervene and appeal this order in accordance with Fed.R.Bankr.P. 8002.