**In re Erdem AMASYA and Saadet Amasya, Debtors.**

**Joseph Braunstein, Chapter 7 Trustee, and Peter Sanizzaro, Plaintiffs,**

**v.**

**Alcoholic Beverages Control Commission and The City of Everett, Defendants.**

**Bankruptcy No. 97–18710–JNF. Adversary No. 98–2256.**

United States Bankruptcy Court, D. Massachusetts.

May 27, 1999.

Daniel S. Bleck, Boston, MA, for plaintiffs.

Daniel A. Hammond, Boston, MA, for Alcoholic Beverages Control Commission.

Robert E. Jordan, Everett, MA, for City of Everett.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the Motion of the Alcoholic Beverages Control Commission (the "ABCC") to Dismiss the Verified Complaint for Declaratory Judgment and Injunctive Relief filed by Peter Sanizzaro ("Sanizzaro") and Joseph Braunstein, the Chapter 7 Trustee of the estate of Erdem and Saadet Amasya (the "Debtors"), for failure to state a claim upon which relief may be granted. *See* Fed. R.Bankr.P. 7012. Sanizzaro filed an Opposition to the Motion to Dismiss. The Court heard the Motion and the Opposition on March 25, 1999 and took the matter under advisement. The issue presented by the Motion is whether Sanizzaro, as the buyer of the Debtors' license for the sale of beer and wine (the "license"), is entitled to an order requiring the ABCC and the City of Everett to approve the transfer of the license to him from the Chapter 7 Trustee, where the Chapter 7 Trustee did not file an application for renewal of the license in November of 1997 and the license expired on December 31,

1997. For the reasons set forth below, the Court grants the Motion to Dismiss.

## II. FACTS

The facts are uncomplicated and undisputed. The Debtors filed a voluntary petition under Chapter 7 on September 12, 1997, and Joseph Braunstein was appointed Chapter 7 Trustee. On October 2, 1997, White Hen Pantry, Inc., a secured party, filed an Emergency Motion for Relief from the Automatic Stay seeking authority to take possession of collateral that the Debtors pledged in conjunction with their franchise operation of a White Hen convenience store in Everett, Massachusetts.[1] The Court heard the Emergency Motion for Relief from the Automatic Stay on October 3, 1997. Because the Chapter 7 Trustee did not oppose the motion, the Court granted White Hen Pantry, Inc. relief from the automatic stay. Sanizzaro is the current franchisee of the White Hen convenience store located in the City of Everett.

On July 24, 1998, the Chapter 7 Trustee filed a Motion to Sell Liquor License Free and Clear of All Claims, Liens and Encumbrances Asserted by Any Party (the "Sale Motion") and a Notice of Intended Private Sale pursuant to which he proposed to sell the Debtors' interest in a beer and wine license, "as is" and "where is," to Sanizzaro for $10,000.00, contingent upon Bankruptcy Court approval, as well as the approval of the transfer of the license by the City of Everett and the ABCC. Because no objections or counteroffers were filed in response to the Sale Motion and Notice with respect to the proposed purchase of the license by Sanizzaro, and because the sale was properly noticed to creditors, the Court approved the sale on September 16, 1998.

In November of 1998, Sanizzaro filed a Motion to Confirm Validity and Existence of Liquor License and to Order Its Trans-

---

[1]. According to White Hen Pantry, Inc. in its Motion for Relief from the Automatic Stay, it owned the equipment and the store premises of the White Hen pantry store operated by the Debtors.

fer. The ABCC and the City of Everett opposed the motion. On December 15, 1998, the Court denied the motion as an improper pleading without prejudice to the filing of an adversary proceeding. On December 22, 1998, the Trustee and Sanizzaro filed the above complaint naming the ABCC and the City of Everett as defendants. In their complaint, the plaintiffs alleged that, following the approval of the Trustee's Sale Motion, Sanizzaro filed an application to transfer the license with the Board of License Commissioners of the City of Everett and that, following inaction by the Board, Sanizzaro was informed that it was the Board's position that the license expired on December 31, 1997 because a renewal application had not been filed. The plaintiffs further stated the following in their complaint:

> Upon information and belief, the Trustee did not file a Renewal Application because, by the time renewals could be filed, the licensed premises had been occupied by a successor tenant and thus another entity was operating on the licensed premises.

> Upon information and belief, the Trustee also could not file a valid Renewal Application without certifying compliance with the Commonwealth's laws relating to taxes pursuant to G.L. c. 62C § 49A, as the License Renewal Application form on its face only allows for an "explanation" as to why a licensed premises is not open for business and not as to why a licensee is not current

on the payment of its taxes. Moreover, submission of the License Renewal Application form without "explanation" as to why certification as to tax payments cannot be made would have been fruitless in any event, as the local licensing authority is prohibited by G.L. c. 62C, § 49A from approving any renewal application without such certification.

In addition, since the automatic stay prevented the Commonwealth from requiring the Trustee to pay the Estate's taxes, the Renewal Application could not legally be required, as an indirect means of requiring that the Estate currently pay taxes.

Further, there were insufficient assets in the Debtors' estate to file for renewal of the License. The Debtors' estate is a "no asset estate." The cost of renewal of a 7–day wine and malt license in the City of Everett is $1,250.00.

Finally, it is undisputed that, in June of 1998, Sanizzaro applied for and, after notice and a hearing, was denied a new license on police power grounds.

## III. POSITIONS OF THE PARTIES

### A. *The ABCC*

The ABCC maintains that the license expired by operation of law on December 31, 1997 because the Trustee, in whom the license vested pursuant to M.G.L. c. 138, § 23, failed to file a renewal application during the month of November pursuant to M.G.L. c. 138, § 16A.[2] According to the

---

**2.** Section 16A provides in relevant part the following:

Licenses issued under section twelve or fifteen shall be automatically renewed for the next annual period upon application by the holder thereof during the month of November and shall be automatically renewed for a renewal of a seasonal license for the next seasonal licensing period upon application during the month prior to the commencement of the seasonal period upon payment of the fee, provided that said license is of the same type as the expiring licenses and covers the same licensed premises. If the application does not meet the conditions hereunder, it shall be treated as an appli-

cation for a new license and all the procedures set forth under section fifteen A shall be applicable thereto. If in any year the number of such license so issuable is less than the number of such holders or former holder so applying, such applicants shall be prima facie entitled to renewals in the order of the dates of their respective applications, to the extent that the same are issuable under section seventeen. Any such application may, however, be rejected for cause, subject to appeal under section seventeen....

Mass.Gen.Laws Ann. ch. 138, § 16A (West 1991).

ABCC, the plaintiffs' argument that the Trustee could not have filed a timely renewal application because he could neither certify that taxes had been paid or pay such taxes is without merit. The ABCC argues 1) that the plaintiffs can cite no statutory authority or case law to support their position; and 2) that the Trustee could have filed a renewal application because the application in use contains blank lines where the applicant is instructed to "explain below" its inability to make any of the pre-printed certifications of fact.[3] In support of its argument the ABCC attached to its motion copies of license renewals filed by Chapter 7 trustees on behalf of bankruptcy estates. In conclusion, the ABCC asserts that excusing the Trustee's failure to file a renewal application would divest the Commonwealth and its political subdivisions of their authority under the Twenty–First Amendment to regulate the transport and sale of alcoholic beverages, and, where applicable, to deny the renewal applications "for cause."

### B. *Sanizzaro*

Sanizzaro maintains that the issue in the case is whether "Trustees are charged with the knowledge that the relevant licensing authorities must ignore and/or excuse the operation of G.L. c. 62C § 49 in the bankruptcy context, but may not, as a matter of law, ignore and/or excuse the written renewal application provisions of c. 138 § 16A." He argues that the Trustee's inability to file a timely and complete renewal application in compliance with both state and federal law does not mandate license termination. Citing, *inter alia, Stern v. Commonwealth of Massachusetts Alcohol Beverage Control Comm'n (In re J.F.D. Enterprises, Inc.),* 183 B.R. 342 (Bankr.D.Mass.1995); *In re Kick–Off, Inc.,* 82 B.R. 648 (Bankr.D.Mass.1987), and M.G.L. c. 62C, § 49A, Sanizzaro maintains

that the Trustee could not have filed a renewal application because he could not make the required certifications or make payments because of the automatic stay.

## IV. DISCUSSION

The Court notes that the Trustee did not file an opposition to the Motion to Dismiss or join in Sanizzaro's opposition. This Court may grant the ABCC's Motion to Dismiss only if it finds that the plaintiffs can prove no set of facts that would entitle them to relief. The Court finds that the plaintiffs have stated no facts that would entitle them to the relief requested. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In *In re J.F.D. Enterprises, Inc.,* 183 B.R. 342 (Bankr.D.Mass.1995); *In re Kick–Off Inc.,* 82 B.R. 648 (BankrD.Mass.1987), and *Aegean Fare, Inc. v. Licensing Bd. (In re Aegean Fare, Inc.),* 35 B.R. 923 (Bankr.D.Mass.1983), Massachusetts bankruptcy judges have set forth the salient principles governing the sale and transfer of liquor licenses in bankruptcy cases. These principles can be summarized succinctly as follows: 1) "[a] liquor license constitutes a property interest sufficient to invoke the jurisdiction of the bankruptcy court," *Aegean Fare,* 35 B.R. at 927; 2) M.G.L. c. 62C, § 49, which gives the Commissioner of Revenue the right to have the ABCC withhold reissuance, renewal or an extension of a liquor license pending notification from the Commissioner that the applicant is in good standing as to the payment of taxes "is invalid under the Supremacy Clause by reason of its inconsistency with the Bankruptcy Code" because the priority of debt repayment is governed by 11 U.S.C. § 507, *Kick–Off,* 82 B.R. at 650; and 3) nonrenewal of a license based solely upon nonpayment of prepetition taxes is not within the police and regulatory powers excepted

---

**3.** These certifications of fact are as follows:

1. The renewed license will be of the same type for the same premises now licensed.

2. The licensee has complied with all laws of the Commonwealth relating to taxes.

3. The premises are now open for business. (If not explain below)

228

from the automatic stay, 11 U.S.C. § 362(b), and, thus, is prohibited by the automatic stay, 11 U.S.C. § 362(a), *Aegean Fare*, 35 B.R. at 928; *see also J.F.D. Enterprises*, 183 B.R. at 351 (refusal of ABCC to remove buyer of liquor license from delinquency list violated automatic stay). Applying these principles to the facts of this case, Sanizzaro has not established that the City of Everett's refusal to approve the transfer of the license violated the automatic stay because at the time of his transfer request the license had expired by operation of law. Moreover, the Court finds that Sanizzaro's argument that the Trustee could not complete the renewal application because he could not make the required certifications or pay the application fee to be an over simplification of the renewal process. The Court is persuaded by the evidence submitted by the ABCC in the form of renewal applications submitted by Chapter 7 Trustees in other bankruptcy cases. Had the Trustee been denied renewal of the Debtors' license solely because of outstanding tax obligations, this Court would have entertained and granted a request for injunctive relief relying upon the decisions in *Aegean Fare* and *Kick–Off.*

The cases cited by Sanizzaro are distinguishable from the instant case. In particular the decision in *In re Nejberger*, 934 F.2d 1300 (3rd Cir.1991), is inapposite. In that case, the debtor's liquor license had expired prepetition. However, the applicable Pennsylvania statute left open the possibility that the license could be renewed. The United States Court of Appeals for the Third Circuit concluded that

the bankruptcy estate had a property interest in the debtor's "opportunity to have his renewal application reconsidered during a ten-month 'grace period' following the expiration of his license." 934 F.2d at 1303. Because the debtor had acted promptly and preserved his rights to seek a renewal by filing an adversary proceeding prior to the expiration of the renewal period, the court concluded that the debtor was entitled to the opportunity to submit a current renewal application, thereby preserving the discretion of the Pennsylvania Liquor Control Board to grant or deny renewal, "excluding ... from consideration the fact that taxes remained unpaid." *Id.* See also *Roeder v. Hall (In re Skyline Properties, Inc.)*, 128 B.R. 393 (Bankr. W.D.Pa.1991).

Under M.G.L. c. 138, § 16A, a debtor or a bankruptcy trustee must file a renewal application in November to preserve the right to automatic renewal. The statute does not contain a grace period. If the holder of the license fails to preserve the right to automatic renewal, the statute provides that the application "shall be treated as an application for a new license." Although § 108 of the Bankruptcy Code extends certain time periods, it is inapplicable here, and there are no other provisions in the Bankruptcy Code that would prevent the expiration of the license by operation of law.[4] The Trustee had the opportunity to seek renewal of the license in accordance with M.G.L. c. 38, § 16A and chose not to do so.[5] Sanizzaro followed the procedures for acquisition of a new license and his request was denied. This adversary proceeding followed.

4. Section 108(b) provides the following:
(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, excluding any suspension of such period occurring on or after the commencement of the case; or
(2) 60 days after the order of relief.
11 U.S.C. § 108(b).

5. Although the Trustee may have lacked the funds with which to pay the application fee, it may have been in the interest of White Hen Pantry, Inc., which filed its Motion for Relief from the Automatic Stay in October of 1997, prior to the November 1997 deadline for filing the renewal application, to assist the Trustee in preserving an asset of the bank-

This Court concludes that there is neither authority nor persuasive argument to eliminate the requirement for a renewal application to preserve the right to automatic renewal, even though disapproval of a renewal application on grounds of nonpayment of taxes is proscribed by § 362(a) of the Bankruptcy Code. Indeed, contrary to Sanizzaro's arguments, the Court finds that *Zelman v. Alcoholic Beverages Control Comm'n*, 335 Mass. 515, 520, 140 N.E.2d 467 (1957), in which the court stated that "[e]xcept for an application in November the current license terminates at the year end and the licensee in respect of a license for the next year stands the same as do applicants who are applying for the first time," remains persuasive authority for the conclusion reached in this decision. Although the statute has been amended since the issuance of that decision, the controlling language remains substantially the same.

## V. CONCLUSION

In view of the foregoing, the Court grants the Motion of the ABCC to Dismiss.

ruptcy estate by loaning funds to the Trustee   for the application fee.